THOMAS BROWN, Petitioner, Appellee, v. HAROLD STURGEON, Commissioner of Public Safety, et al., Respondents, Appellants.

No. 44758.

OCTOBER 17, 1939.

William Shuminsky, for petitioner, appellee.

Ralph W. Crary and Virgil O. DeWitt, for respondents, appellants.

HAMILTON, J.—Appellee, Thomas Brown, a world war veteran, has been on the police force of the city of Sioux City, Iowa, since the year 1919. He obtained his appointment by passing a civil service examination as provided by the then existing law governing such matters. His first assignment was that of patrolman which position he held until October, 1933, when Thomas McBride, the then commissioner of public safety, assigned him to the position of a detective. While his appointment as a detective was somewhat irregular in that no formal written order was made and no record of approval entered of record, nevertheless, the evidence shows without dispute that McBride, the then commissioner of public safety, said to Brown, "I am going to make a detective out of you, you start tomorrow." Brown was given a detective's badge and ever since said date he has been recognized by the city authorities as a detective and he at once began drawing the pay of a detective and performing the duties of a detective, and ever since that time he has drawn the pay of a detective and has continued to serve in that capacity. On the 27th day of January, 1938, L. W. Miller, the then chief of police of Sioux City, Iowa, made an order of transfer demoting Brown from his position of detective to that of patrolman. This order states:

"Effective February 1, 1938, Thomas Brown is transferred from duty as detective and shall report in uniform for duty as patrolman."

Brown brought the matter to the attention of Gordon C. Hollar, the then commissioner of public safety, who, in turn, revoked the order of the chief of police and reinstated Brown to his position as detective. Chief of police Miller appealed to the civil service commission of the city of Sioux City, Iowa. Proper proceedings were taken for a hearing before said commission and such a hearing was had on the 1st day of February, 1938, and on March 30, 1938, an order was entered by said commission sustaining the appeal of Miller and demoting Brown from his position as detective in the police department to the position of patrolman therein. Whereupon Brown instituted these proceed-

ings in certiorari resulting in a judgment and decree sustaining the writ and an order forthwith reinstating Thomas Brown in his position as detective in said police department and it is from this order and decree that the respondents have appealed.

The sole question to be determined by this appeal is the legality of the order of the civil service commission sustaining the action of the chief of police in demoting appellee Brown from the position of detective to that of patrolman.

It is the contention of appellants that the trial court erred in holding that appellee had qualified, under the civil service laws, for the rank of detective and in holding that his position of detective was legal and entitled him to civil service rights; that the court further erred in holding appellee was entitled to hold the position of detective by reason of long and efficient service and in holding that the time of appellee's service as a detective could be tacked onto the time of his service as a patrolman thereby giving appellee five years previous service at the time of the taking effect, on April 15, 1937, of chapter 156, Acts of the 47th General Assembly, and that the court also erred in holding that the soldiers preference law had any legal bearing on the questions involved in the case.

Prior to the enactment of the law as found in chapter 156, Acts of the 47th General Assembly, which took effect April 15, 1937, there was some confusion, because of indefinite expressions, in the previous statutory provisions applicable to persons already in the service of the police and fire departments but, throughout all the provisions of the law relating to the matter, it is evident that there was an intent on the part of the legislature to give preference, under the civil service examinations, to those already employed.

By chapter 31 of the 29th General Assembly, which became effective July 1902, there was created, for the first time in this state, a board of police and fire commissioners and provision was made for holding examinations for the purpose of determining the qualifications of the applicants for positions on the police and fire forces of a city. Appointments were to be made from a certified list; however, provision was made to the effect that, in the first instance, appointments might be made without examination of persons who had been in the employ of the city in these capacities for more than three consecutive

years next preceding the creation of said board. The law also provided that, in holding an examination, the board might consider the experience and service in the case of persons who are on the police and fire forces at the time of the passage of the act and, if said persons were found to have been efficient and are otherwise qualified, they should be given a preference for continuance in such employment. Chapter 48 of the 32d General Assembly, approved March 29, 1907, relating to a particular form of city government contained similar provisions with reference to examinations by a civil service commission and provided that "existing employes heretofore appointed, or employed after competitive examination, or for long service under the provisions of chapter 31, acts of the 29th General Assembly, and subsequent amendments thereto, shall retain their positions without further examination unless removed for cause. * * *" These provisions are carried over into the Code of 1924, section 5695, in the following language:

"Examination excused. Persons now holding positions for which they have heretofore been appointed or employed after competitive examination, or who have rendered long and efficient service, shall retain their positions without further examination, but may be removed for cause."

This section was carried into the present Code of 1935 in the same identical language. The 47th General Assembly (chapter 156, sec. 6) repealed section 5695 of the 1935 Code and enacted an entirely new statute which provided, among other things, that:

"Any person regularly serving in or holding any position in the police or fire department * * * which is within the scope of this chapter on the date this act becomes effective in any city, who has then five years of service in a position or positions within the scope of this chapter, shall retain his position and have full civil service rights therein."

This last act was the law on the date that Brown received notice from the chief of police, Miller, that he was transferred from detective to patrolman and at the time that the order of the commission was made upholding the chief of police and finding that Brown was not entitled to retain his position as

detective with full civil service rights. It will be noticed that the statutory law does not attempt to classify by making any distinction in the rank of officers in the police department falling under civil service. This was left to the city council and the record, in this case, discloses that the ordinances of the city of Sioux City, Iowa, at the time Brown was assigned to duty as a detective, provided as follows:

"Assignments. The commissioner of public safety shall have the right to assign patrolmen to the duties of detective or plain-clothes man, and likewise any detective, or plain-clothes man to the duties of patrolman; and the commissioner of public safety shall have the right to make such assignment or reassignment of duties within the police department as he may deem necessary for the good of the department and such assignment or reassignment shall not be deemed either a promotion or demotion in rank."

This was the state of the law, under the ordinances of said city, governing this matter as shown by the agreed statement of facts until Ordinance No. P-11619 was passed and adopted on the 9th day of April, 1936, section 7 of which designated the rank of the various offices of the police department and provided for promotions being made based on merits, seniority, or service and eligibility as shown by voluntary competitive examinations before the civil service commission and further provided that appointments to any position which carries with it an increase in salary shall be considered as a promotion.

Viewing the question in the light of the foregoing provisions of the statute and the city ordinances, we are led to conclude that Thomas Brown was a person regularly serving in and holding a position in the police department within the scope of chapter 156, Acts of the 47th General Assembly, on the date said act became effective, to wit, April 15, 1937, and at that time had to his credit five years of service in a position or positions within the scope of said chapter and was thus entitled to retain his position with full civil service rights therein until removed for cause; that on the date of the order of the then chief of police, L. W. Miller, to wit, February 1, 1938, demoting Brown there was a distinction in rank provided by the ordinances of said city in the position of detective and patrol-

man, the position of detective being superior to that of patrolman; and that the attempted demotion could not be made except for cause shown.

It is true that the record shows that Brown never passed an examination for the position of detective and also discloses that he took such an examination on April 5, 1937, and failed to obtain a passing grade but this examination was not acted upon until October 1937, at which time the present law was in force. Another examination, taken on April 6, 1936, is mentioned in the record but these papers were never graded. Appellants urge, in argument, that the taking of these examinations amounts to an admission that an examination was necessary to obtain an appointment as a detective. Such admissions, if any, could have no effect in establishing the law. As heretofore mentioned, until chapter 156, Acts of the 47th General Assembly, became the law, there was enough confusion, due to indefinite expression, as to cause some doubt or apprehension as to Brown's status which might account for the seeming inconsistency in the conduct of Brown in taking these examinations. It is also true that, at the time chapter 156, Acts of the 47th General Assembly, became effective, Brown had not served as a detective five years; however, we are inclined to the view that the words ''in a position or positions'' contained in said act was intended to cover just such a situation as we find here. For nearly 19 years, Brown served either as patrolman or detective. It is not pointed out in the record wherein the duties of a patrolman and those of a detective differ except that it is indicated that a patrolman wore a uniform and a detective might wear plain clothes. There was also a slight difference in the salary. We presume there are also other differences insofar as specific duties are concerned, but the general nature of their work would appear to have much in common. The city ordinances, as heretofore pointed out, made it possible for the commissioner of public safety to do exactly what commissioner McBride did do, viz., transfer a patrolman to the position of a detective or vice versa which would not be considered either a promotion or demotion thus recognizing no distinction in rank at that time. During all the 19 years of service by Brown, the record discloses that he has never been removed, demoted, suspended or

discharged for neglect of duty, disobedience, misconduct, or failure to perform his duties.

Under this record, we are satisfied that the legislature, undoubtedly, intended such a person to come within the class mentioned in section 5695 of the 1935 Code of Iowa "who have rendered long and efficient service" and who for this reason would have been, under said section 5695, entitled to retain his position without further examination and we are further satisfied that, under the law as it now stands, he comes within the class of those "who has then five years of service in a position or positions within the scope of this chapter" and as such was and is entitled to retain his position and have full civil service rights therein.

The decree of the trial court is, accordingly, affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.