Debra DOWNS and the Iowa Civil
Rights Commission, Appellees,

v.

The BOARD OF TRUSTEES OF the PO-
LICE RETIREMENT SYSTEM OF the
CITY OF SIOUX CITY, Iowa, Appellant.

No. 2–65835.

Supreme Court of Iowa.

Nov. 25, 1981.

Michael S. Walsh, City Atty., and Patrick J. Nugent, Asst. City Atty., for appellant.

Thomas J. Miller, Atty. Gen., and Victoria L. Herring, Asst. Atty. Gen., for appellees.

Considered by LeGRAND, P. J., and HARRIS, ALLBEE, McGIVERIN, and LARSON, JJ.

ALLBEE, Justice.

In October 1978, Debra Downs, a black/native American female, was one of twenty-eight persons who applied for appointment as a Sioux City police officer. After passing the written examination given by the Sioux City Civil Service Commission (CSC), *see* § 400.8(1), The Code 1977, Downs proceeded to the physical examination stage, which is administered by the board of trustees of the Sioux City Police Retirement System (pension board), *see id.* Although Downs passed the required back x-ray and the physical agility test, the pension board doctor who examined Downs recommended that she not be admitted to the police retirement system. This recommendation was based on the doctor's conclusion that Downs was likely to develop arthritis in the future at the site of a healed ankle fracture which was set with pins. Although a second medical opinion sought by the pension board reached a different conclusion, the board adopted its own doctor's recommendation. As a result, the CSC refused to allow Downs to proceed to the final test, an oral examination. It was thought that because Downs had not passed the physical examination, any further testing would be a futile gesture and would be contrary to the CSC's examination rules, which did not permit applicants who failed one stage of the testing to proceed to subsequent stages.

Meanwhile, in April 1979, Downs filed a complaint with the Iowa Civil Rights Commission alleging that her disqualification by the pension board constituted illegal discrimination on the basis of race or disability. *See* § 601A.6(1)(a), The Code 1979. When the CSC refused to allow Downs to take the oral examination, the Civil Rights Commission, acting pursuant to authority granted by section 601A.5(4), The Code 1979, sought and obtained a mandatory injunction requiring that Downs be permitted to complete all the examinations. The trial judge in that action ruled that the pension board's determination that Downs had not passed the physical examination was not binding on the CSC, and that "an appropriate time" for the CSC to make its own determination on that matter would be after *all* tests were completed.[1]

In compliance with the court order, the CSC allowed Downs to take the oral examination, which she passed. It then placed her name third on a list of the ten applicants highest in standing who were certified to the city council as eligible for appointment to the position of police officer. *See* § 400.11, The Code 1979. The list stated that the applicants were certified on the basis of the written and oral examinations; no mention was made of the physical examination or the agility test.

After the list was certified, but before any of the certified applicants were appointed police officers, the pension board voted to accept as members of the police retirement system all persons on the list except Downs. Again, the reason given for Downs' rejection was the adverse recommendation of the pension board doctor.

---

1. In making the latter ruling, the judge did not have the benefit of our subsequent decision in *Patch v. Civil Service Commission*, 295 N.W.2d 460 (Iowa 1980). In *Patch*, we approved a civil service rule which provided that persons who did not pass one phase of the testing sequence could be disqualified from proceeding to subsequent phases. Such a procedure, we said, "would . . . save the Commission a considerable amount of time and prevent unreasonable delay in certification of a list." *Id.* at 465.

The Civil Rights Commission and Downs then initiated this certiorari action in district court challenging the pension board's action as illegal, discriminatory and outside the board's jurisdiction. Trial court sustained the writ on the ground that the pension board acted beyond its jurisdiction by voting not to accept Downs as a member of the retirement system after the CSC had placed her name on the eligibility list. On appeal, the pension board argues that trial court's judgment should be reversed either on its merits or because the court lacked subject matter jurisdiction. The board also asserts trial court erred in failing to sustain its motion to strike a portion of petitioners' trial brief.

### I. Subject matter jurisdiction.

An assistant Iowa attorney general acted as attorney for both of the petitioners—the Iowa Civil Rights Commission and Downs—in the certiorari action below. In trial court's ruling on the petition, however, the court determined that it did not have jurisdiction to decide the discrimination claims because no administrative release had been obtained by Downs pursuant to section 601A.16, The Code 1979. The court also ruled that, because there was no statutory authority for the Civil Rights Commission to file or join in a petition for writ of certiorari, only Downs, individually, was properly before the court as to the other claims. The Civil Rights Commission has not appealed from these rulings.

The pension board now asserts that because the Civil Rights Commission was not properly before the court and because an assistant attorney general has no authority to represent a private party in bringing a certiorari action, the trial court had no claim before it upon which it could act; accordingly, the board argues, trial court never acquired subject matter jurisdiction.

■ Assuming, without deciding, that the Civil Rights Commission was not prop-

erly before the court and that the assistant attorney general lacked authority to represent Downs, we nonetheless believe the pension board's jurisdictional argument fails. Because Downs was named as a petitioner, and her claim was properly before the court, the pension board's objection actually relates only to the legal authority of the attorney who acted on her behalf. See § 610.17, The Code 1979 (motion challenging authority of adverse party's attorney). We are satisfied that such an objection does not go to the subject matter jurisdiction of a court and cannot be raised for the first time on appeal.[2] See 7 Am.Jur.2d Attorneys at Law § 144 (1980) (question of want of authority of plaintiff's attorney cannot be raised by defendant for first time in appellate court). Accord, Baker v. Baker, 248 Iowa 361, 365, 81 N.W.2d 1, 3 (1957) (challenge to authority of attorney should be made promptly). Cf. Qualley v. Chrysler Credit Corp., 261 N.W.2d 466, 468 (Iowa 1978) (objection to subject matter jurisdiction cannot be waived and therefore can be raised at any stage of proceeding, including appeal).

■ Furthermore, although the specific issue was not raised here, we note that certiorari is the proper means of challenging action taken by a police retirement system board of trustees. Benson v. Fort Dodge Police Pension Board of Trustees, 312 N.W.2d 548, 550 (Iowa 1981). Thus, no challenge to the subject matter jurisdiction of the trial court may be based on an objection that the judicial review procedures of the Iowa Administrative Procedure Act, chapter 17A, The Code 1979, were not followed here. Id.

In a related matter, the pension board contends that it is entitled to an attorney fee award pursuant to section 601A.16(5), The Code 1979, because it was "frivolous" for the Civil Rights Commission to bring a certiorari action without any statutory authority to do so. Even if we agreed the

---

2. An exception, of course, would be a challenge to the authority of an attorney *to take the appeal.* Although the pension board could have filed a motion challenging the assistant

attorney general's authority to represent Downs *on this appeal*, no such objection was made. Therefore, we need not consider that question here.

Commission's action was frivolous, however, there would be no basis for an attorney fee award because section 601A.16(5) pertains only to actions brought pursuant to chapter 601A, and therefore is not applicable here.

## II. *Propriety of sustaining writ of certiorari.*

■ An appeal from the judgment of a district court in a certiorari proceeding is governed by the rules applicable to appeals in ordinary actions. Iowa R.Civ.P. 318. Therefore, we review for assigned error, and uphold the judgment on factual questions if it is supported by substantial evidence. *Brock v. Dickinson County Board of Adjustment,* 287 N.W.2d 566, 568 (Iowa 1980).

Trial court sustained Downs' writ of certiorari largely on the basis of two conclusions: (1) that the CSC, not the pension board, is the proper body to interpret and take final action upon the report of the pension board doctors relating to the physical examination of a police officer applicant, and (2) that Downs' name was properly placed on the certified eligibility list, and therefore the pension board's subsequent decision not to admit her to the retirement system had the practical effect of illegally removing her name from that list. To determine whether the writ of certiorari was properly sustained, we must decide whether these underlying conclusions are correct.

### A. *Final arbiter of civil service physical examination results.*

■ Civil service commissions such as the Sioux City CSC are charged by law with the responsibility of determining the qualifications of persons seeking appointment to civil service positions. The governing code provisions are as follows:

1. The commission shall . . . under such rules, including minimum and maximum age limits, as shall be prescribed and published in advance by the commission . . . hold examinations for the purpose of determining the qualifications of applicants for positions under civil service, other than promotions, which examinations shall be practical in character and shall relate to such matters as will fairly test the mental and physical ability of the applicant to discharge the duties of the position to which the applicant seeks appointment. *Provided, however, that such physical examination* of applicants for appointment to the positions of policeman, policewoman, police matron or firefighter *shall be held under the direction of and as specified by the boards of trustees of the fire or police retirement systems* established by section 411.5. . . .

2. The commission shall establish the guidelines for conducting the examinations under subsection 1 of this section.

§ 400.8, The Code 1979 (emphasis added). The commission shall, within ninety days after the beginning of each competitive examination for original appointment . . . certify to the city council a list of the names of the ten persons who qualify with the highest standing as a result of each examination for the position they seek to fill, or such number as may have qualified if less than ten, in the order of their standing, and all newly created offices or other vacancies in positions under civil service which shall occur before the beginning of the next examination for such positions shall be filled from said lists. . . .

§ 400.11, The Code 1979.

Downs argues that the above-emphasized proviso of section 400.8 gives the pension board only the responsibility to *administer* the civil service physical examinations, and that the responsibility to finally determine the physical suitability of an applicant on the basis of the physical examination results must rest with the CSC. Although the pension board's brief appeared to take a contrary position, the board's attorney conceded on oral argument that when the pension board and the CSC disagree as to whether an applicant has passed the physical examination, the CSC's determination should prevail. Thus Downs, the pension board and trial court all appear to agree on that point. Given the CSC's statutory responsibility for determining the overall

qualifications of civil service applicants, we also agree with that conclusion. Therefore, we hold that the pension board may make nonbinding recommendations as to who has passed a civil service physical examination, but that the final responsibility for determining the physical suitability of an applicant rests with the CSC.[3]

### B. *Downs' eligibility for appointment.*

Sections 400.11 and 400.17, The Code 1979, provide that no person shall be certified as eligible or appointed to a civil service position unless he has passed the civil service examination for the position. A complete civil service examination for a police officer applicant tests both mental and physical suitability. § 400.8(1). As observed earlier, the list certified by the CSC said only that the named persons had passed the written and oral examinations, both of which test only mental suitability. There is no evidence in the record which indicates that the CSC made any determination as to whether Downs had passed the physical examination to its satisfaction. If no such determination was made, or if the CSC determined she had *not* passed the physical examination, Downs' name would not have been properly placed on the certified list.[4] If that were the case, the pension board's action would not have had the illegal effect of rendering a properly certified applicant ineligible for appointment.

■ Trial court appears to have assumed, without making a factual determination, that because the CSC placed Downs' name on the certified list, she must have passed the physical examination to the CSC's satisfaction. We do not believe this assumption was warranted, however, in light of the fact that the CSC permitted Downs to take the oral examination only under compulsion of court order, and that the certified list mentioned only the written and oral examinations. Accordingly, we conclude that trial court acted prematurely in sustaining the writ of certiorari without first conducting a factual inquiry on this question. We therefore reverse and remand for trial court to determine if the CSC actually decided whether Downs had passed the physical examination.

### C. *Legality of pension board's action.*

Should trial court find, upon remand, that the CSC did in fact determine that Downs had passed the physical examination, the issue of the legality of the pension board's action will again arise. Therefore, we will address that question now to provide guidance upon remand.

■ The powers of local police pension boards are set forth in chapter 411, The Code 1979. We find nothing in that chapter, or elsewhere in the Code, which grants such boards the power to exclude from the retirement system a person who has been properly certified by the CSC as eligible for appointment. The pension board argues that such authority is found in section 411.-3(1), The Code 1979, which states: "All persons who become police officers . . . shall become members [of the police retirement systems established by this chapter] *as a condition of their employment.*" (Emphasis added.) In the pension board's view, the condition referred to is a condition precedent, requiring the board to decide who may become a member before any actual appointments are made. In our

3. Unlike trial court, however, we do not base our conclusion upon the decision in *Niffennegger v. City of Des Moines*, 289 N.W.2d 606 (Iowa 1980). The issue in *Niffennegger* concerned the proper source of funding for the civil service physical examinations required by section 400.8. Thus, our statement in *Niffennegger* that the examinations "are themselves no part or function of the retirement system" meant only that the cost of those examinations was not part of the operating expense of the retirement system and thus could not be paid out of retirement system funds. *Id.* at 607–08. *See* § 411.8(3), The Code 1979. The statement was not intended to have any bearing on the question presented in the case at bar.

4. Furthermore, had Downs been appointed a police officer without having passed the physical examination, she would have been subject to removal at any time. *See Glenn v. Chambers*, 242 Iowa 760, 765, 48 N.W.2d 275, 277 (1951); C. Rhyne, *The Law of Local Government Operations* § 13.54, at 289 (1980).

view, however, the membership condition is a condition subsequent in which the pension board has no discretion to determine who may become a member. The most reasonable reading of the statutory scheme is that once a person has passed the appropriate mental and physical examinations and been duly appointed a police officer, *see* § 411.-1(2), The Code 1979, he is both *entitled and required* to become a member of the retirement system. Thus, once an applicant has been properly certified as eligible for appointment, the pension board has no power to reject that person from the retirement system, either before or after his appointment from the certified list.

### III. *Conclusion.*

In light of our resolution of this appeal, we decline to address the pension board's assigned error concerning its motion to strike a portion of Downs' trial brief.

Trial court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion. Costs of this appeal shall be assessed to the pension board.

REVERSED AND REMANDED.