H. Allen McBRIDE, Appellant,

v.

CITY OF SIOUX CITY, K.R. Castner, Gary Worth, and Karen Hoss, Appellees.

No. 88–82.

Supreme Court of Iowa.

July 19, 1989.

Dennis L. Eaton, Des Moines, for appellant.

C. Maurice Rawe and George A. Carroll, Sioux City, Asst. City Attys., for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This is an appeal from H. Allen McBride's unsuccessful attempt to redress his firing by the Sioux City Department of Housing, including claims for damages based on alleged slander by a city employee. The district court dismissed McBride's termination claim by way of summary judgment, and his slander case on the merits. We affirm.

I. *Background.* In January 1978, McBride was hired by Sioux City as assistant housing manager. His duties included reviewing and approving applications for low income housing. The position, as advertised, was non-civil service. After successful completion of a probationary period, McBride was classified as a "Full Time Regular Non–Civil Service" employee. He neither disputed nor appealed this classification.

In January 1984, McBride was discharged from his employment after his supervisor, Karen Hoss, discovered that he had backdated an applicant's housing application and thereby expedited her ability to obtain subsidized housing. Hoss expressed concern that McBride's act appeared to have been prompted by some personal favor or monetary gain. Before firing him, Hoss gave McBride the opportunity to offer some legitimate explanation for his action, but he was unable or unwilling to do so. He was then fired.

Following his discharge, McBride told the supposedly advantaged tenant what Hoss had said about the "personal favors." She apparently interpreted the accusation to infer that she had slept with McBride to obtain housing. The tenant called Hoss and, in a later meeting witnessed by two of the tenant's friends, Hoss allegedly made the same or similar statement regarding the appearance of impropriety surrounding McBride's actions.

Six months later, McBride sued the city on a variety of theories: (1) for declaratory judgment that he was a civil service employee entitled to the discharge procedures of Iowa Code chapter 400 (1983); (2) for money damages under 42 U.S.C. section 1983; (3) for breach of his employment contract; (4) for sex discrimination; and (5) for slander by Karen Hoss.

On the city's motion for summary judgment, all but the discrimination and slander issues were decided adversely to McBride. He later dismissed the discrimination claim. The parties proceeded to trial on the slander claim alone.

Based principally on the noncredible testimony of the witnesses, the district court found insufficient evidence to support McBride's allegation of slander. McBride now appeals the trial court's dismissal of that claim on the merits, as well as the adverse rulings on issues previously decided by way of summary judgment.

■ II. *Sufficiency of Notice of Appeal.* The city, as a preliminary matter, urges us to dismiss McBride's appeal of the matters resolved on summary judgment. It claims to have been insufficiently notified of McBride's intent to appeal those issues.

We have often said that substantial compliance with the notice requirements of Iowa Rule of Appellate Procedure 6(a) is sufficient so long as the notice does not confuse, mislead, or prejudice the appellee. *See Miller v. Wellman Dynamics Corp.*, 419 N.W.2d 380, 382–83 (Iowa 1988); *In re Guardianship of Ankeney*, 360 N.W.2d 733, 735–36 (Iowa 1985); *In re Marriage of Schissel*, 292 N.W.2d 421, 423 (Iowa 1980). We prefer to dispose of cases on the merits and not on mere technicalities. *Hawkeye Security Ins. Co. v. Ford Motor Co.*, 199 N.W.2d 373, 378 (Iowa 1972).

Although the text of McBride's notice of appeal refers only to the final judgment in the slander trial, his posttrial rule 179(b) motion referred to the civil service and termination issues as well. We believe the city could therefore discern McBride's intent to appeal from the earlier grant of summary judgment. Moreover, the city has claimed no prejudice beyond the "tension and distraction" suffered by its employees as a result of this lengthy litigation. Accordingly, we overrule the city's motion to dismiss and proceed to a consideration of McBride's appeal on the merits.

III. *Appellate Issues.* The central question on this appeal is whether the trial court properly granted summary judgment for the city on McBride's claim that he either held civil service status or some other constitutionally protected property interest in continued employment with the city such that his summary discharge denied him rights of due process. The material facts giving rise to McBride's claim are undisputed and thus the case is ripe for summary adjudication under Iowa Rule of Civil Procedure 237(c). *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 424 (Iowa 1988). We turn first to McBride's claim of civil service eligibility before considering his other "entitlement" claims and alleged due process violations.

■ A. *Chapter 400.* McBride's claimed status as a civil servant rests on alternative theories: first, that if he was not originally classified civil service, he should have been; second, that he qualifies for "covering in" under Iowa Code section 400.4; or third, that he is entitled to the benefits of chapter 400 by operation of law. We shall consider the arguments in the order presented.

It is undisputed that McBride was not hired pursuant to chapter 400. He did not take a civil service exam. *See* Iowa Code § 400.17; *Downs v. Board of Trustees of Police Retirement System*, 312 N.W.2d 563, 567 n. 4 (Iowa 1981) (dictum; police officer who did not pass civil service exam is subject to removal at any time, and not covered by chapter 400). He was not certified on a list to the city council. *See* Iowa Code §§ 400.11, 400.17. He was not appointed to his position by the City Manager of Sioux City. *See* Iowa Code § 400.15; 1938 Op.Iowa Att'y Gen. 264, 265 (librarians, assistants, and employees do not fall within civil service act because not appointed by city); *see also Dennis v. Bennet*, 258 Iowa 664, 668, 140 N.W.2d 123, 126 (1966) ("appointment" to civil service position means designation or assignment to position by proper appointing authority).

Given these circumstances, McBride has aimed his challenge at the original classification of his position as non-civil service. His claim, however, misses the target.

The creation of civil service classifications "is an administrative matter, usually vested in the commission, and concerning which the commission may exercise a wide discretion, subject to review by the courts only when corrupt, arbitrary or erroneous in law, provided suit is timely instituted." 3 E.P. McQuillin, *The Law of Municipal Corporations* § 12.77, at 306 (3d ed. 1982) (hereinafter "E.P. McQuillin"); *see People ex rel. McKeown v. Hurley*, 343 Ill.App. 413, 419–20, 99 N.E.2d 355, 358–59 (1951) (commission's action in classifying plumber lower than plumbing inspector was not abuse of discretion); 1976 Op.Iowa Att'y Gen. 716, 717–19 (classification of positions by commission acceptable so long as not arbitrary or unreasonable) (quoting 3 E.P. McQuillin at § 12.134).

While our civil service statute does not clearly designate whether it is the municipality itself or the civil service commission that has the responsibility to establish civil

service classifications, we note that Iowa case law and other authority indicate that both entities may share this responsibility. *See Helgevold v. Civil Serv. Comm'n,* 367 N.W.2d 257, 261 (Iowa App.1985) (municipality may *reclassify* positions "in furtherance of successful function of the service"); *cf.* 1977 Op.Iowa Att'y Gen. 15, 16 (city or commission has discretion to place employees under chapter 400 when new or reclassified position created).

Irrespective of which entity possessed the authority to classify McBride's position in the first instance, we find no abuse of discretion demonstrated by the facts in this case. Iowa Code section 400.6 specifically excepts the "principal assistant of each department" from civil service appointment. Neither the commission's decision to place the position of assistant housing manager outside chapter 400 nor the city's failure to reclassify the position as civil service have been shown by McBride to have been made "on grounds or for reasons clearly unreasonable." *Sheer Constr., Inc. v. W. Hodgman & Sons, Inc.,* 326 N.W.2d 328, 334 (Iowa 1982).

Furthermore, McBride's challenge to his classification comes too late and by the wrong procedural device. The proper way to challenge his lack of classification would have been by writ of mandamus while still employed. *See* 3 E.P. McQuillin at § 12.77 (writ of mandamus available to compel classification of position); *Leahey v. Department of Water & Power,* 76 Cal.App.2d 281, 285, 173 P.2d 69, 71–72 (1946); Iowa Code § 661.1 (mandamus proper action to compel inferior tribunal, board, or corporation to perform a duty). At least two jurisdictions have held that a civil service classification cannot be challenged collaterally by an employee seeking to be restored to a position. *People ex rel. Corkill v. McAdoo,* 113 A.D. 770, 773, 99 N.Y.S. 324, 326 (1906); *see Leahey,* 76 Cal.App.2d at 285–86, 173 P.2d at 71–72 (declaratory relief inappropriate means to attempt to circumvent lost right to mandamus action to compel civil service classification); *see also* 4 E.P. McQuillin at § 12.268 (citing *McAdoo* ). We think the district court properly

refused to recognize McBride's attempt to gain declaratory relief in this way.

McBride's second claim with regard to his chapter 400 status is that he should be "covered in" by operation of Iowa Code section 400.7. This section allows employees to be "grandfathered" under the chapter 400 umbrella if their positions were not covered by a civil service classification at the time of their hire, but the position later becomes a civil service position by reclassification or the adoption of a city civil service system. Iowa Code § 400.7; *Romine v. Civil Serv. Comm'n,* 181 N.W.2d 431, 432–34 (Iowa 1970); *Brown v. Sturgeon,* 227 Iowa 136, 138–42, 287 N.W. 834, 835–37 (1939); *cf.* 1977 Op.Iowa Att'y Gen. 15, 16–17 (longstanding employees not hired under chapter 400 are subject to summary termination unless reclassified civil service by statute, ordinance, or commission action). There is no evidence here, however, that Sioux City or its civil service commission reclassified assistant housing managers as civil service after McBride was hired. Section 400.7 therefore does not apply to McBride's situation.

Finally, McBride claims that he should be afforded civil service protection by operation of law. His claim rests upon cases from other jurisdictions which hold that an employee is covered under civil service by operation of law where a city unlawfully fails to implement a civil service system. *See e.g., Simpson v. City of Grand Island,* 166 Neb. 393, 399, 89 N.W.2d 117, 121–22 (1958). Our examination of these cases reveals, however, that they deal with situations where a city has failed to implement a civil service system in open violation of the dictates of a state statute. *Laureano–Agosto v. Garcia–Caraballo,* 731 F.2d 101, 103–04 (1st Cir.1984); *Grenchik v. State ex rel. Pavlo,* 175 Ind.App. 604, 373 N.E.2d 189, 191–93 (1978); *Simpson,* 166 Neb. at 399, 89 N.W.2d at 121–22; *Myers v. Board of Directors,* 5 Or.App. 142, 150–51, 483 P.2d 95, 99–100 (1971); *Logan v. City of Two Rivers,* 222 Wis. 89, 93, 267 N.W. 36, 37–38 (1936). No basis for such a claim can be sustained here.

In summary, McBride has presented neither a factual nor legal basis for claiming status as a civil servant and entitlement to the protection of chapter 400 and the district court was correct in so ruling.

B. *Contract of employment.* We turn then to McBride's second theory underlying his claimed due process violation: that the city's employment manuals created a contract of employment which could not be terminated in the summary manner utilized here. Two employment manuals are involved: one for professional, administrative, technical and supervisory personnel (PATS), and one designated as "AP4.2."

McBride characterizes the issue as one of "implied contract." The city claims it is a question of "unilateral contract." We briefly address both theories.

In Iowa, a contract will be implied where there has been a mutual manifestation of assent by acts and deeds (rather than words) to the same terms of an agreement. *See Duhme v. Duhme,* 260 N.W.2d 415, 419 (Iowa 1977); *Newman v. City of Indianola,* 232 N.W.2d 568, 574 (Iowa 1975); *Sulzberger Excavating, Inc. v. Glass,* 351 N.W.2d 188, 193 (Iowa App. 1984). The substance of such a contract must be determined from the acts of the parties in light of the subject matter and the surrounding circumstances. *Newman,* 232 N.W.2d at 574.

The crux of McBride's argument is that the PATS manual and AP4.2 created a belief on his part that he could only be discharged "for cause." An examination of the acts and deeds of the parties in relation to these documents, however, reveals no basis for such a claim.

Although the PATS manual contains a set of grievance procedures, it clearly explains that the procedures apply only to the "specific provisions" of the manual and do not encompass civil service procedures. An examination of the manual demonstrates specific provisions dealing with pay, vacation leave, and similar benefits, but it has no specific provision for discipline or discharge "for cause." While the other document, AP4.2, provides that employees *may* be discharged for cause, this document explains that it applies only to employees appointed by the city manager, indicating that it was intended to apply only to civil servants. Furthermore, AP4.2 was distributed to department heads, not to employees.

The acts of the parties in relation to these documents demonstrate that there was not sufficient mutual assent between the city and McBride to impose a "discharge for cause" requirement sufficient to support an implied contract of employment. *Cf. Sulzberger Excavating,* 351 N.W.2d at 194; *Newman,* 232 N.W.2d at 574. The clearest demonstration of this lack of assent occurred when the city, in an earlier disciplinary action against McBride, refused to allow him to utilize the employee manual grievance procedure to appeal his discipline.

We find that McBride's alleged "implied" contract is nothing more than his one-sided hope for continued employment. Other courts have denied recovery under similar factual circumstances. *See Parker v. United Airlines, Inc.,* 32 Wash.App. 722, 726–27, 649 P.2d 181, 183–84 (1982) (no implied contract of employment found where employee manual stated that employees "may" be discharged for cause, and grievance procedures were merely unilateral, non-negotiated means of conflict resolution rather than mode of review for disciplinary action); *see also Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 886 (10th Cir.1985).

The city's characterization of the question as one of "unilateral contract" is the more common approach taken by litigants like McBride. Basically, a unilateral contract of employment may be created when an employer provides a handbook containing disciplinary procedures to a worker, the expressions contained in the handbook (in light of surrounding circumstances) give the worker a reasonable understanding of continued employment, and the employer has reason to know of the worker's understanding. *Cannon v. National By–Products, Inc.,* 422 N.W.2d 638, 640–41 (Iowa 1988); *see Young v. Ce-*

*dar County Work Activity Center,* 418 N.W.2d 844, 848 (Iowa 1987); *see also Pine River State Bank v. Mettille,* 333 N.W.2d 622, 624–26 (Minn.1983).

■ Courts applying unilateral contract theory have generally held that an employee handbook must meet three requirements to rise to the level of a unilateral contract of employment: (1) the handbook must be sufficiently definite in its terms to create an *offer;* (2) the handbook must be communicated to and accepted by the employee so as to create *acceptance;* and, (3) the employee must continue working, so as to provide *consideration. See Duldulao v. Saint Mary of Nazareth Hosp.,* 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12–13, 505 N.E.2d 314, 318–19 (1987); *Hunt v. IBM MidAmerica Employees Fed. Credit Union,* 384 N.W.2d 853, 854–57 (Minn.1986) (employee manual not unilateral contract because terms too indefinite to constitute an offer); *Pine River State Bank,* 333 N.W.2d at 626–27 (employees manual met three requisites of unilateral contract); *Johnston v. Panhandle Co-op Ass'n,* 225 Neb. 732, 738–42, 408 N.W.2d 261, 265–68 (1987) (employee handbook disciplinary terms too indefinite to constitute offer); *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333–37, 514 N.Y.S.2d 209, 211–13, 506 N.E.2d 919, 921–23 (1987) (same).

Claims under unilateral contract theory frequently break down because the disciplinary provisions are too indefinite to create an offer, *see Hunt,* 384 N.W.2d at 857, or there is no acceptance because the disciplinary provisions are never communicated to the employee, *see Sabetay,* 69 N.Y.2d at 336, 514 N.Y.S.2d at 213, 506 N.E.2d at 923; *Hoffman La Roche, Inc. v. Campbell,* 512 So.2d 725, 734 (Ala.1987) ("[i]t is axiomatic that an offer must be communicated before it may be accepted"); *Spero v. Lockwood, Inc.,* 111 Idaho 74, 75, 721 P.2d 174, 175 (1986). McBride's unilateral contract claim fails for similar reasons.

The employee manual makes no clear reference to grounds or procedures for termination so it cannot constitute an "offer" of continued employment. *See Hunt,* 384 N.W.2d at 857 (manual insufficient to con-

stitute offer as it set out no grounds for discharge). Further, AP4.2 can afford no protection to McBride because it was distributed to department heads, not to employees, thus eliminating the "acceptance" element. *See Sabetay,* 69 N.Y.2d at 336, 514 N.Y.S.2d at 213, 506 N.E.2d at 923 (no unilateral contract where employment policies not communicated to employee). Thus we find no error in the district court's conclusion that there was no contract of employment, implied or unilateral, between McBride and the city.

■ C. *Due process violations and 42 U.S.C. section 1983 claim.* Our affirmance of the trial court's summary judgments for the city on McBride's civil service and contract theories defeats both his section 1983 and common law claims for money damages. Because he was never a civil servant, McBride had no right under chapter 400 to pre-discharge procedures, nor to reinstatement or back pay. This lack of civil service status also disposes of McBride's claim that his summary termination was a violation of due process sufficient to entitle him to money damages under 42 U.S.C. section 1983. *See Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684, 690–91 (1976) (although a property interest in employment may arise by virtue of a statute specifically conferring employment benefit, policeman had no such interest by virtue of ordinance merely naming him a "permanent employee").

■ Moreover, McBride's failure of proof in support of an employment contract, either implied or unilateral, demonstrates that he did not have a sufficient property interest in his employment to claim section 1983 relief. *Cf. Perry v. Sindermann,* 408 U.S. 593, 600–03, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570, 579–80 (1972) (employment policies and manuals may create an expectancy interest); *Wilson v. Robinson,* 668 F.2d 380, 382–83 (8th Cir.1981) (same). We therefore turn to McBride's last claim, that of slander.

■ IV. *Slander.* At trial, McBride attempted to prove that Karen Hoss slan-

dered him by telling three applicants for housing services—Wilkinson, Rasmussen, and Johnson—that Hoss fired McBride because he expedited Wilkinson's housing application in return for personal favors. McBride argued that the "personal favors" language was slanderous because it connoted the exchange of bribes or sexual favors, and was slander per se because it accused him of impropriety in his job performance.

Karen Hoss claimed, and the district court found, that she merely told McBride that the Wilkinson matter could give the appearance of impropriety because, short of any other explanation, it appeared to be based on "personal gain or friendship." The court found it undisputed in the record that Hoss was not accusing McBride of improper conduct, "but had used the terminology in an illustrative way." More importantly, the court concluded there was no slander, at least as to Wilkinson and Rasmussen, because there was no "publication" of the statements by Karen Hoss. The record fully supports the court's findings

When Hoss fired McBride, the two were alone in Hoss' office with the door closed. Within a day or two of his discharge, however, McBride himself called Wilkinson and Rasmussen and told them Hoss fired him and accused him of taking personal favors. Hoss did not speak to Wilkinson or Rasmussen until sometime after McBride told them about the reasons for his firing.

In short, whether the "personal favors" phrase was slanderous or not, McBride published the statement to Wilkinson and Rasmussen before Hoss ever could have done so. We have previously held that there is no publication, and hence no slander, when the defendant makes the allegedly defamatory statements only to the plaintiff, and it is the plaintiff who disseminates the statements. *See Belcher v. Little*, 315 N.W.2d 734, 738 (Iowa 1982) (discussing slander of title); *see generally* L. Blades & R. Kitzinger, *Iowa Tort Guide* § 7.12 (2d ed. 1981).

The only question is whether Hoss published the allegedly defamatory statements to Linda Johnson when she accompanied Dawn Wilkinson to Hoss' office. In its ruling, the trial court totally discredited her testimony, as well as that of Wilkinson and Rasmussen, as "confusing and inconsistent as to when they talked with the defendant Karen Hoss and who said what to whom on the occasion in question." We give particular weight to the trial court's findings in this regard, *see* Iowa R.App.P. 14(f)(7), in view of the fact that plaintiff has failed to include in the appendix or in the record on appeal a transcript of Johnson's testimony. We have no reason to depart from the trial court's conclusion that McBride "failed to prove by a preponderance of the credible evidence ... that [Hoss] made any statement to ... Linda Johnson which was or could have been construed by her as having any injurious or adverse effect on McBride's reputation, or which was an attack on his integrity and moral character." Accordingly, we affirm the judgment of the district court.

AFFIRMED.