Susan L. PALMER, Plaintiff–
Appellee/Cross–Appellant,

v.

WOMEN'S CHRISTIAN ASSOCIATION
OF COUNCIL BLUFFS, IOWA, an
Iowa Corporation, d/b/a Jennie Ed-
mundson Memorial Hospital, Defen-
dant–Appellant/Cross–Appellee,

and

James Friel and David Holcomb,
Defendants.

No. 91–155.

Court of Appeals of Iowa.

Feb. 25, 1992.

John R. Douglas and David A. Blagg of
Cassem, Tierney, Adams, Gotch & Douglas,
Omaha, Neb., and Richard M. Crotty, Coun-
cil Bluffs, for defendant-appellant/cross-ap-
pellee.

Lyle A. Rodenburg, Council Bluffs, for
plaintiff-appellee/cross-appellant.

Heard by OXBERGER, C.J., and
SCHLEGEL and HABHAB, JJ., but
decided en banc.

HABHAB, Justice.

Susan Palmer was employed as a registered nurse at Jennie Edmundson Memorial Hospital (hospital) in Council Bluffs. She allegedly gave improper emergency care to a sixteen-week fetus born in the hospital's outpatient restroom. After Palmer turned the fetus over to others, the fetus was found to be alive and was given medical attention. However, death followed.

As a result of this incident, the hospital terminated Palmer's employment. Palmer later filed the present lawsuit against the hospital and two of its executives. She alleged numerous causes of action, including wrongful discharge, libel, slander, interference with contract of hire, interference with prospective employment contracts, negligent and intentional infliction of emotional distress, and fraudulent misrepresentation.

The trial court granted the defendants a partial directed verdict. It dismissed all claims against the two individual defendants and all claims except wrongful discharge against the hospital. The suit then proceeded to trial on the wrongful discharge claim. The jury awarded Palmer a verdict of $150,000 against the hospital.

In ruling on posttrial motions, the trial court concluded the damage award was excessive. It granted the hospital a new trial limited to damages. However, the trial court denied the hospital's additional motion for judgment notwithstanding the verdict.

The hospital has appealed the denial of judgment notwithstanding the verdict. Palmer has cross-appealed. The hospital advances two reasons for its assertion that it is entitled to judgment notwithstanding the verdict.

First, it alleges the hospital's personnel handbook creates an at-will employment relationship. Therefore, the hospital argues, Palmer's employment can be terminated for any reason or no reason. In this respect, the trial court agreed with the hospital's interpretation of the handbook. However, it denied the motion for judgment notwithstanding the verdict because a hospital executive acknowledged in testimony just cause was required for discharge.

Second, the hospital argues public policy should not allow Palmer an action for wrongful discharge. The hospital contends public policy favors the protection of hospital patients. Therefore, it argues it should be able to discharge a nurse when her nursing superiors conclude her patient care is inadequate.

In her cross-appeal, Palmer raises several issues. Palmer first contends the amount of her damage award was supported by the evidence. She therefore argues the district court erred by granting a new trial on the issue of damages.

Palmer next claims the trial court erred by granting the defendants a partial directed verdict. She argues there is sufficient evidence to show defendants (1) libeled and slandered her; (2) interfered with her contract of hire; and (3) interfered with her prospective employment contracts. She also assigns as error granting the individual defendants a directed verdict on the ground all their actions were taken merely as agents for the hospital.

Finally, Palmer contends the district court erred by excluding from evidence a document prepared by a hospital executive for a Job Service hearing. The document stated reasons for Palmer's discharge. Palmer alleges the publication of the document constituted defamation. She argues if the document was admitted, there would be sufficient evidence on her libel and slander claims to generate a jury question.

■ Our review is for errors of law. Iowa R.App.P. 4. Because we find it dispositive of this case, we deal first with defendant's motion for judgment notwithstanding the verdict on Palmer's wrongful discharge claim.

A judgment notwithstanding the verdict must stand or fall on the grounds stated in the motion for directed verdict. On appeal, our review is limited to those grounds.

When considering a motion for a judgment notwithstanding the verdict, the

district court must view the evidence in the light most favorable to the party against whom the motion is directed. In reviewing ..., we also view the evidence in the same manner. Simply put, we ask, was there sufficient evidence to generate a jury question?

*Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 617 (Iowa 1990).

## I. *Contract by Employee's Handbook*

■ Palmer claims the employees' handbook created a contract of employment between herself and the hospital. As a result of this contract, she alleges, she could only be discharged for cause.

The hospital moved for judgment notwithstanding the verdict on the wrongful discharge claim. It claimed the handbook by its own terms did not create a contract, and Palmer was in fact an at-will employee. While agreeing with the hospital's argument on its face, the trial court overruled the motion on the grounds that: 1) Palmer had testified she was told the handbook defined the employment terms, and 2) one of the hospital executives testified just cause must exist to terminate the plaintiff. We set out the pertinent portions of their testimony.

To Ms. Palmer, the plaintiff.

Q. I want to ask you about this personnel handbook. When you were hired on with Jennie Edmundson Hospital, did you have an orientation period where you went over the personnel handbook? A. [Palmer]. Yes.

Q. Did you understand that to be the terms of your employment with the hospital? A. Yes.

Q. And was that what they told you in orientation? A. Yes.

\* \* \* \* \* \*

To Mr. Holcomb, hospital executive/defendant:

Q. You identified yourself as a vice-president of Jennie Edmundson Hospital? A. [Holcomb]. Yes, sir.

Q. And you are the representative of the hospital here today? A. Yes, sir.

Q. Now, do you agree with your counsel that you had to have just cause to terminate Susan Palmer in this case? A. Yes.

Q. And we'll address the cause here in a minute. I want to ask you, did you follow the procedures, do you think, in this case prescribed by the hospital? A. Yes.

Q. And those are contained in the personnel manual? A. Yes.

We have reviewed the hospital's handbook, which was entered into evidence. Prominently displayed on the first page, the handbook provides:

It is also important to understand that this Personnel Handbook *does not constitute a contract between the Hospital management and the Hospital employees.* Rather, the information contained in this handbook reflects a general description of the policies, services, and benefits of the Hospital currently in effect. The Hospital management retains the right to modify or abolish these policies, services, and benefits and reserves the right to adopt new policies, services, and benefits. (Emphasis added.)

\* \* \* \* \* \*

... Within the limits of the authority delegated to it, the Hospital must have exclusive right to exercise the customary functions of management, including, but not limited to, the right to manage and [next page] control the premises and equipment; the right to select, hire, promote, suspend, dismiss, assign, supervise, and discipline employees; ....

We now turn to the applicable case law to evaluate the parties' claims. The Iowa Supreme Court has detailed the criteria for reviewing claims of contract created by employee handbooks.

Fogel's (the plaintiff) reliance on *Cannon* [*v. National By–Products, Inc.*, 422 N.W.2d 638 (Iowa 1988)] is misplaced. This court has recently recognized that an employee manual may constitute a unilateral contract only if the traditional requirements of contract formation have been met. *McBride* [*v. City of Sioux City*, 444 N.W.2d 85, 91 (Iowa 1989)].

Thus, an employee handbook may create a unilateral contract if (1) the handbook is sufficiently definite in its terms to create an *offer;* (2) the handbook has been communicated to and accepted by the employee so as to create an *acceptance;* and (3) the employee has continued working, so as to provide *consideration. McBride,* 444 N.W.2d at 91. Except in the case of ambiguity, whether such a written instrument binds the parties in contract is a question of law. *Allen v. Highway Equipment Co.,* 239 N.W.2d 135, 139 (Iowa 1976); *Butterfield v. Citibank of South Dakota,* 437 N.W.2d 857, 858 (S.D.1989); *Johnston v. PanHandle Co-op Ass'n,* 225 Neb. 732, 736, 408 N.W.2d 261, 265 (1987); J. Calamari and J. Perillo, *Contracts* § 3–14 at 174 (3d ed. 1987).

The starting point of the unilateral contract inquiry is whether the terms of the handbook are sufficiently definite to constitute an offer of continued employment. As we noted in *McBride,* claims premised on unilateral contract theory frequently fail because the handbook's dismissal or disciplinary provisions are too indefinite to meet this standard of definiteness. *See McBride,* 444 N.W.2d at 91. The reason for requiring such a high threshold of definiteness is two-fold. First, courts are generally reluctant to dismantle an employer's long-standing common-law right to terminate at-will in the absence of an express offer by the employer to do so. *See Butterfield,* 437 N.W.2d at 859; *see also Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880, 890 (1980). Second, the handbook language must be sufficiently definite in its offer of continued employment that a fact finder is not left adjudicating the alleged breach of a "contract" for which the fact finder has supplied its own terms. *Hunt [v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853, 857 (Minn.1986)].

*Fogel v. Trustees of Iowa College,* 446 N.W.2d 451 (Iowa 1989) (emphasis in original).

The criteria set out by our supreme court imposes a narrow set of guidelines for employee handbook contracts. The critical question before us is not whether hospital policy mandated just cause for dismissal. The real question is *whether the handbook created a contract between the parties* which provided only for just cause dismissal. Based upon the evidence in the record and the clear language of the handbook itself, we determine the handbook did not create such a contract.[1]

Nor do we find the testimony at trial sufficient to challenge our determination. Palmer herself testified she was told the handbook contained the terms of her employment. The provisions of the handbook are clear that it does not constitute a contract between the hospital and its employees. This fact was specifically spelled out on the very first page of the handbook. It would have been one of the first items read by anyone conscientiously reviewing the terms of the handbook.

Also prominently displayed on the first page is the fact the hospital reserves the right to terminate. This language is contrary to any expectation of no termination without just cause. The provisions of the handbook are clear and unambiguous. By Mrs. Palmer's own testimony, it is clear that she understood the handbook "to be the terms of [her] employment with the hospital." Those terms make it clear she was an "at-will" employee who could be terminated for any reason.

Likewise, the hospital executive's testimony does not prove the handbook was an employment contract. At most, it shows the hospital's *policy* was only to terminate for just cause. This is not synonymous with a contract. The hospital is free to set policy as it deems appropriate, within the bounds of the law. It is only bound by policy if it so contracts with another party.

---

**1.** This case is distinguishable from the recent Iowa Supreme Court case *Hunter v. Board of Trustees of Broadlawns Medical Center,* 481 N.W.2d 510 (Iowa 1992). Unlike *Hunter,* at 512–513, in the present case the employee's handbook clearly states it is not a contract, a fact which is acknowledge by the trial court.

Other than the two pieces of testimony referred to above,[2] the only evidence of a contract offered by Palmer was the handbook itself. As previously explained, by its own express terms, it did not create a contract. It is clear the handbook establishes that Palmer was an at-will employee. Either she or her employer were free to terminate the employment at any time.

We determine as a matter of law the employee's handbook did not create an employment contract. There is insufficient evidence of contract to create a jury question. We determine the trial court erred in overruling the hospital's motion for judgment notwithstanding the verdict. We reverse the trial court on this issue.

## II. *Admission of Report to Job Service*

We now address the exclusion of certain evidence. We do this next, as the excluded evidence contains much of Palmer's case against the individual defendants and the hospital for defamation, libel, slander, and interference with prospective business relations, and other claims. Admission of this evidence is critical to avoid the directed verdicts for defendants on those claims.

The evidence at issue is a letter to Job Service listing the hospital's reasons for terminating Palmer. The trial court excluded the letter on the grounds of absolute privilege under Iowa Code section 96.-11(7)(b)(2) (1987). The section provides:

> A report or statement, whether written or verbal, made by a person to the [Job Service] department or to a person administering this law is a privileged communication. A person is not liable for slander or libel on account of such a report or statement.

A clause stating "unless the report or statement is made with malice" was added by the legislature after the date of this incident and the letter. *See* Iowa Code § 96.11(7)(b)(2) (1991). The trial court held this provision should not be applied retroactively. Alternatively, the trial court held there was insufficient evidence of malice to create a jury question.

We agree with the trial court on both grounds. The Iowa Supreme Court specifically held section 96.11((7)(b)(2), as written at the time of the incident, provided an absolute privilege to communications such as this one. *Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98, 102–03 (Iowa 1985). Additionally, we determine there is insufficient evidence of malice to generate a jury question if the new statute was applied retroactively. The trial court correctly excluded the proffered document, referred to as Exhibit 7. We affirm on this issue.

## III. *Other Claims.*

Palmer assigns err on the trial court's grant of a directed verdict as to the two individuals and on all claims other than wrongful discharge. We determine the trial court correctly directed those verdicts. There is insufficient evidence in the record to generate a jury verdict on those claims. We affirm on these issues.

## IV. *Conclusion.*

We reverse the trial court's refusal to grant judgment notwithstanding the verdict on the wrongful discharge claim. We determine as a matter of law the employee's handbook did not create a binding employment contract. We remand this case to the trial court for entry of judgment notwithstanding the verdict on the wrongful discharge claim. This case is to be dismissed.

We affirm the trial court's exclusion of the report to Job Services. We affirm the directed verdicts for the individuals and other claims. We determine other issues raised by the parties are either without merit or are adequately covered by our opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.

All Judges concur, except SCHLEGEL, J., and OXBERGER, C.J., who dissent.

---

**2.** We note appellee in her brief makes reference to certain statements made by defendant's counsel in opening remarks. The appellant denies the statements were made in the context urged by appellee. We are unable to find from the record that opening remarks were recorded.

SCHLEGEL, Judge (dissenting).

I respectfully dissent. The majority determines as a matter of law the hospital's employee handbook did not create an employment contract. I disagree.

The supreme court clearly defined the requirements necessary to determine an employer handbook is a contract in *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 456 (Iowa 1989). A handbook is a contract if it is "sufficiently definite in its terms to create an offer," if there is an acceptance, and if the employee has continued working to provide consideration. *Id.* In *Fogel*, the court noted Grinnell College's handbook was not definite enough to constitute an offer of continued employment:

> The first sentence of the "dismissal" section unambiguously states that an employee may be terminated "for reasons not prejudicial to the employee." Although the handbook goes on to state the notice which the college would strive to provide depending on the circumstances necessitating dismissal, no guarantee of permanent employment is made or even suggested. No restriction to dismissal "for cause" can be found. The handbook is silent on the meaning of "misconduct" giving rise to the college's prerogative of immediate dismissal.

*Id.* The court found the Grinnell handbook was not a contract.

The hospital handbook, on the other hand, is very specific and definite. With regard to termination procedures, it states:

TERMINATION

Since employment in this hospital is based on mutual consent, either the employee or employer is privileged to terminate employment. It is important for the employee record that termination be brought about properly. It is also important for the hospital that it have adequate advance knowledge of an employee's desire to terminate. There are several types of termination procedures as described below:

\* \* \* \* \* \*

4. DISMISSAL—This is an immediate termination for serious reasons imposed by authority of the supervisor or Department Head. All such terminations are automatically reviewed by the Personnel Director and reported to the Administrator. *There are two general conditions that can subject an employee to dismissal or suspension. The first is refusal to carry out the reasonable directions of supervisors; the second is serious misconduct.* Employees who are dismissed will not receive notice or pay in lieu of notice. (Emphasis added.)

The other types of termination procedures provided for in the handbook are resignation, quitting, involuntary termination, and termination during probationary period.

I believe the employer's specific guidelines reflect that the handbook is a contract. Unlike the Grinnell handbook, the hospital handbook contains a restriction for "serious misconduct" and a list of infractions which may result in dismissal. The hospital testified it relied on reason number twenty-two of that list, "[a]ny action which jeopardizes the health, safety, or well-being of patients, visitors, or fellow employees." All elements of a contract are present giving rise to a cause of action for its breach.

Moreover, David Holcomb, the hospital's agent, testified the hospital was required to have just cause before it terminated Palmer and that the personnel manual set out the proper procedures. In addition to this admission, Palmer testified she was told by the hospital during her training that the employment manual defined her employment terms. I believe this testimony showing the conduct and beliefs of the parties is more important than the wording of the handbook (stating it is not a contract) on which the majority relies. The handbook and testimony evidence generate a question for a jury to decide.

I find the trial court properly instructed the jury as to Palmer's burden to prove her employment was defined by the manual. Defendant did not object to this instruction. The trial court made no error of law, and there was sufficient evidence to generate a jury question. The jury did, in fact, find in Palmer's favor. I believe the hospital's

motion for judgment notwithstanding the verdict was properly overruled. I would affirm the trial court on all issues and, accordingly, remand this case for a new trial to determine solely the proper amount of damages based upon the prior jury finding that Palmer's employment was wrongfully terminated.

OXBERGER, C.J., joins this dissent.

OXBERGER, Chief Judge (dissenting).

I join Judge Schlegel's dissent.