Warren G. FOGEL, Appellant,

v.

The TRUSTEES OF IOWA
COLLEGE, Appellee.

No. 88–1220.

Supreme Court of Iowa.

Sept. 20, 1989.

Rehearing Denied Oct. 13, 1989.

John G. Black of Black, Harvey & Gold-
man, P.C., Des Moines, for appellant.

John R. Phillips, Frank B. Harty, and Greg A. Naylor of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

This appeal involves plaintiff Warren Fogel's claim of wrongful termination by his employer, Grinnell College. Four of Fogel's claims—physical disability discrimination, retaliatory discharge, breach of employment contract and breach of covenant of good faith and fair dealing—were dismissed by the trial court on Grinnell's motion for summary judgment. Fogel's fifth claim—age discrimination—was rejected by a jury following trial. On Fogel's appeal from these adverse rulings, we affirm the judgment of the district court.

I. Background Facts and Proceedings.

Fogel was employed by Grinnell College as a receiving clerk and custodian in the college's food service department from August 1977 until his dismissal on January 28, 1985. At the time of his hiring, Fogel was fifty-five years of age. Throughout his employment, Fogel's duties were to unload trucks, handle food products, and perform custodial work in student dining halls and kitchen areas.

There was no written employment contract between Fogel and the college. At the time of Fogel's hiring, however, the college gave him a "Grinnell College Staff Handbook" which was later updated specifically for the guidance of food service employees. Pertinent to this appeal are the handbook's terms regarding dismissal from employment:

DISMISSAL. If termination is necessary for reasons not prejudicial to the employee (reasons unrelated to job performance), he/she may expect to receive notice of not less than one month prior to the termination date. Upon receiving such notice, the employee is free both to seek and to accept other work immediately and to receive any accrued vacation pay. When dismissal is necessary because of unsatisfactory work, as much notice as possible will be given, ordinarily not less than two weeks. However, dismissals occurring during the probationary period require no notice. Dismissals necessitated by dishonesty or misconduct become effective immediately upon determination of facts concerning the offense.

While employed by the college, Fogel suffered a number of minor injuries resulting in medical insurance claims and reimbursement. The only incident of a serious nature occurred in September 1983. At that time, Fogel experienced back pain from lifting chairs and mopping which caused him to miss between five and ten days of work. The medical and chiropractic attention necessitated by this injury was covered by insurance. It was not until August 1985, seven months after the discharge triggering this appeal, that Fogel filed a workers' compensation claim for this back injury.

Although Fogel routinely received satisfactory evaluations with respect to his work performance, he was also the subject of numerous disciplinary actions. All but one related to what the personnel director described as a "chronic hygiene problem." In September 1981, Fogel was admonished concerning proper dress and personal hygiene standards. One month later Fogel received a written warning for reporting to work in a dirty uniform. In December 1981, Fogel was suspended and placed on probation for urinating in a mop bucket while on duty. He was also cited for carelessness in 1983 after he backed a college vehicle into a parked car.

The incident giving rise to the present action occurred in December 1984 while the college was in recess for the holidays. Fogel, who then wore long hair and a beard, was told by his hair stylist that she thought he had head lice. Fogel used a recommended treatment shampoo and that same evening attended the food service employees' holiday party. Six days later, Fogel consulted a physician in Grinnell who

confirmed the presence of "nits," or lice larvae, in Fogel's eyebrows. Further treatment was prescribed.

During the semester break, Fogel wrote a letter to his immediate supervisor concerning the lice condition and the action he had taken in regard to it. In the letter, he acknowledged that he had been aware of a problem "for quite a few months and just thought of a nerve condition, causing the problem." He also updated her about the medical attention and bills he had incurred for continuing back pain, and the exercise program that he was required to follow "[w]orking or no working."

When classes resumed and Fogel reported for work in mid-January 1985, he was advised by David McConnell, director of food service, that he could not return to his job without a medical release. Fogel obtained the release and returned to work that day. On January 28, 1985, McConnell sent Fogel a letter informing him that he was discharged immediately because he was "unfit to work in a food service establishment." The letter stated that Fogel had put the entire food service operation "in jeopardy by coming to work with head lice," an act McConnell understood to be in violation of state food service establishment laws. The letter also cited the 1981 mop bucket incident as a breach of sanitation standards.

Fogel unsuccessfully appealed his dismissal to the college's executive vice-president and president. He then filed suit in district court charging the college with age discrimination, disability discrimination, wrongful discharge in violation of public policy, breach of contract, and breach of an implied covenant of good faith and fair dealing. Upon completion of discovery, the college moved for summary judgment on all counts of Fogel's petition. It asserted that no material facts were in dispute regarding any of Fogel's claims and that the college was entitled to judgment as a matter of law.

The district court sustained the college's motion on all but the age discrimination claim. There it noted the existence of a prima facie case of discrimination (plaintiff in a protected age group, qualified for the job, discharged, replaced by a younger person) and concluded that a fact question remained concerning whether the college's proffered reason for termination was authentic or pretextual. The issue was ultimately tried to a jury and resolved in favor of the college. Fogel does not challenge the jury's verdict on this appeal.[1]

As previously noted, Fogel's other claims fared no better. Viewing the summary judgment record in a light most favorable to Fogel, the district court found a total lack of factual support on the principal element of Fogel's disability discrimination claim: disability. Likewise, the court concluded that the record before it was devoid of any causal link between Fogel's termination and his subsequently filed workers' compensation claim so as to support a claim of retaliatory discharge. The court also summarily rejected Fogel's claim that the college breached an implied covenant of good faith and fair dealing, a cause of action which has never been recognized by this court.

Finally, the district court concluded that the college handbook was insufficient, as a matter of law, to create a contract of employment between Fogel and Grinnell that would give rise to an action for its breach. The court concluded that Fogel was an at-will employee, subject to termination "at any time for any reason." It is from these rulings that Fogel has appealed.

## II. Scope of Review.

Fogel insists that his "economic life should not be snuffed out without a trial." His assertion highlights our principal inquiry on this appeal: Did the trial court err when it granted Grinnell judgment as a matter of law? Familiar rules guide our inquiry. We review them briefly.

1. Fogel did move for new trial based on adverse pretrial rulings that stemmed from the court's summary dismissal of his other claims. Our affirmation of the trial court's summary dismissal obviates the need to address Fogel's appeal from the trial court's refusal to grant a new trial based on the same issues.

Summary judgment is proper when there appears no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The burden is upon the moving party to show that no issue of material fact exists. *Northrup v. Farmland Industries, Inc.*, 372 N.W.2d 193, 195 (Iowa 1985). Moreover, the resisting party is afforded every legitimate inference that can be reasonably deduced from the evidence and a fact question is generated if reasonable minds could differ on how the issue should be resolved. *Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 187–88 (Iowa 1982).

The party resisting summary judgment, however, "may not rest upon the mere allegations or denials of his pleading." Iowa R.Civ.P. 237(e). The resistance must set forth specific facts which constitute competent evidence showing a *prima facie* claim. *Prior v. Rathjen*, 199 N.W.2d 327, 330 (Iowa 1972). By requiring the resister to go beyond generalities, the basic purpose of summary judgment procedure is achieved: to weed out "[p]aper cases and defenses" in order "to make way for litigation which does have something to it." *Id.* (quoting *Gruener v. Cedar Falls*, 189 N.W.2d 577, 580 (Iowa 1971)). With these principles in mind, we consider the arguments of the parties in the light of the record of pleadings, affidavits, and deposition testimony submitted to the trial court.

III. Arguments on appeal.

■ A. *Disability discrimination.* Fogel's claim of disability discrimination rests on the mandate of Iowa Code section 601A.6(1)(a) (1987) that no employer shall "discharge or discriminate against any employee ... on the basis of disability." Disability is defined by statute as a "physical or mental condition of a person which constitutes a substantial handicap." Iowa Code § 601A.2(11). A "substantial handicap" is a "physical or mental impairment which substantially limits one or more major life activities." *Brown v. Hy–Vee Food Stores, Inc.*, 407 N.W.2d 598, 600 (Iowa 1987) (citing 240 Iowa Admin.Code 6.1(1)); *see also Probasco v. Iowa Civil Rights*

*Comm'n*, 420 N.W.2d 432, 435–36 (Iowa 1988).

Fogel contends that his 1983 back injury disabled him and that a reasonable person could infer that this disability—and not his lice infestation—was the reason Grinnell discharged him. In support of this contention, Fogel points to the letter he wrote just prior to his dismissal in which he advised his supervisor not only about his lice infestation but about his continuing back pain. He also recounted a conversation with the food service director some months earlier when, in connection with Fogel's complaints about the weight of chairs he had to move, the director told him that if he could not do the job Grinnell would have to find someone who could.

Notwithstanding the inferences that might be drawn from these statements standing alone, Fogel made it clear in his own deposition testimony that his 1983 back injury has never prevented him from doing his job. Moreover, he freely acknowledged that he never told either his supervisors or any other college personnel that he was disabled. At no time did he furnish the college with any medical evidence of a disability prior to his discharge.

Clearly Fogel's work record and personal testimony belie any suggestion that he is suffering from a disabling handicap that has substantially limited a major life activity entitling him to protected class status. As this court has previously observed, the purpose of disability discrimination legislation is to protect the truly disabled—a goal that would be devalued were such protection available to persons with minor impairments that are widely shared. *Probasco*, 420 N.W.2d at 436. Given the record before us, we find no error in the trial court's determination that Fogel was not disabled and that he could not establish a prima facie case of disability discrimination under chapter 601A. Thus Grinnell was entitled to judgment on this claim as a matter of law.

■ B. *Retaliatory discharge.* In *Springer v. Weeks & Leo Co.*, this court recognized an employee's cause of action

for retaliatory discharge in those situations in which the dismissal "serves to frustrate a well-recognized and defined public policy of the state." 429 N.W.2d 558, 560 (Iowa 1988). The plaintiff in *Springer* claimed that her discharge was in retaliation for her refusal to withdraw a workers' compensation claim she had filed in connection with an allegedly employment-related skin ailment. *Id.* at 559. Here, Fogel asserted that his discharge was motivated in substantial part by Grinnell's concern that Fogel "had made or would make" a workers' compensation claim.

The trial court, though acting without the benefit of our *Springer* decision, noted that causes of action for retaliatory discharge based on violation of public policy were gaining increased acceptance in other jurisdictions. Nevertheless, it rejected Fogel's request for such relief as a matter of law because the record so clearly revealed that Fogel never gave Grinnell any reason to believe a workers' compensation claim was contemplated. Based on our review of the record, we find no glimmer of proof to the contrary.

As noted by the trial court, Fogel worked steadily and performed all his regular duties up to the time of his discharge. In deposition testimony, he readily conceded that none of the injuries previously described gave rise to any complaint by his supervisors that he should not file medical insurance or workers' compensation claims. To the contrary, such claims were always paid. McConnell testified under oath of having no knowledge that Fogel intended to seek compensation for his 1983 back injury. In fact, that claim was not filed by Fogel until eight months after his discharge.

Under this record, we agree that no material facts exist to support a claim of retaliatory discharge. The district court was correct in so ruling.

C. *Breach of contract.* The district court determined that Fogel was an at-will employee whose employment could be terminated at any time, for any lawful reason. This common law doctrine of employment at-will is firmly rooted in Iowa law. *See,* e.g., *Wolfe v. Graether,* 389 N.W.2d 643, 652 (Iowa 1986); *Northrup,* 372 N.W.2d at 195; *Abrisz v. Pulley Freight Lines, Inc.,* 270 N.W.2d 454, 455 (Iowa 1978); *Harper v. Cedar Rapids Television Co.,* 244 N.W.2d 782, 791 (Iowa 1976).

■ To date, this court has carved out only two narrow exceptions to the employment at-will doctrine. The first, described earlier in this opinion under Fogel's claim of retaliatory discharge, creates liability in tort when the discharge is in clear violation of a "well-recognized and defined public policy of the State." *Springer,* 429 N.W.2d at 560. The second exception arises where a contract created by an employer's handbook or policy manual guarantees an employee that discharge will occur only for cause or under certain conditions. *McBride v. City of Sioux City,* 444 N.W.2d 85, 90 (Iowa 1989); *Cannon v. National By-Products, Inc.,* 422 N.W.2d 638, 640 (Iowa 1988); *Young v. Cedar County Work Activity Center,* 418 N.W.2d 844, 847–48 (Iowa 1987). These cases hold that an at-will employee discharged in violation of the terms of such a handbook or policy manual may maintain a breach of contract action against an employer.

Fogel contends that Grinnell's staff handbook created a contract of employment under which he could be discharged only for "misconduct." Citing the court's error for having decided the question as a matter of law, Fogel insists (1) that a material fact question exists over whether carrying lice constitutes misconduct, even for a food service employee, and (2) that the contractual status of the employee handbook is strictly a fact question determinable by *his* reasonable expectations. For this latter proposition, Fogel relies heavily on our language in *Cannon* that

[w]hether the written personnel policies became part of plaintiff's contract is to be determined on the basis of plaintiff's reasonable expectations.

*Cannon,* 422 N.W.2d at 640.

■ Fogel's reliance on *Cannon* is misplaced. This court has recently recognized that an employee manual may constitute a unilateral contract only if the tradi-

tional requirements of contract formation have been met. *McBride*, 444 N.W.2d at 91. Thus, an employee handbook may create a unilateral contract if (1) the handbook is sufficiently definite in its terms to create an *offer;* (2) the handbook has been communicated to and accepted by the employee so as to create an *acceptance;* and (3) the employee has continued working, so as to provide *consideration. McBride*, 444 N.W.2d at 91. Except in the case of ambiguity, whether such a written instrument binds the parties in contract is a question of law. *Allen v. Highway Equipment Co.*, 239 N.W.2d 135, 139 (Iowa 1976); *Butterfield v. Citibank of South Dakota*, 437 N.W.2d 857, 858 (S.D.1989); *Johnston v. PanHandle Co-op Ass'n*, 225 Neb. 732, 736, 408 N.W.2d 261, 265 (1987); J. Calamari and J. Perillo, *Contracts* § 3–14 at 174 (3d ed. 1987).

The starting point of the unilateral contract inquiry is whether the terms of the handbook are sufficiently definite to constitute an offer of continued employment. As we noted in *McBride*, claims premised on unilateral contract theory frequently fail because the handbook's dismissal or disciplinary provisions are too indefinite to meet this standard of definiteness. *See McBride*, 444 N.W.2d at 91. The reason for requiring such a high threshold of definiteness is two-fold. First, courts are generally reluctant to dismantle an employer's long-standing common-law right to terminate at-will in the absence of an express offer by the employer to do so. *See Butterfield*, 437 N.W.2d at 859; *see also Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880, 890 (1980). Second, the handbook language must be sufficiently definite in its offer of continued employment that a fact finder is not left adjudicating the alleged breach of a "contract" for which the fact finder has supplied its own terms. *Hunt*, 384 N.W.2d at 857.

On its face, Grinnell's handbook falls short of the definiteness required to constitute an offer of continued employment. The first sentence of the "dismissal" section unambiguously states that an employ-

ee may be terminated "for reasons not prejudicial to the employee." Although the handbook goes on to state the notice which the college would strive to provide depending on the circumstances necessitating dismissal, no guarantee of permanent employment is made or even suggested. No restriction to dismissal "for cause" can be found. The handbook is silent on the meaning of "misconduct" giving rise to the college's prerogative of immediate dismissal. Contrary to Fogel's suggestion that this silence creates an ambiguity in the writing entitling him to offer evidence regarding the intent of the parties, we agree with another court that recently found that an employer's unspecific guidelines "merely reflect[ ] the terminable-at-will status of its employees." *Butterfield*, 437 N.W.2d at 859.

We conclude as a matter of law that Grinnell's employment manual was too indefinite to create an enforceable unilateral contract giving rise to a cause of action for its breach. The district court correctly granted summary judgment for Grinnell on this claim.

D. *Implied covenant of good faith and fair dealing.* As an alternative to his other theories of recovery, Fogel urges this court to recognize a cause of action for breach of an implied covenant of good faith and fair dealing. The doctrine stems from the implied duty of good faith and fair dealing recognized in all contracts. *See* Restatement (Second) of Contracts § 205 (1981). Applied in the employment context, an employee proving a prima facie case of unjust termination could shift to the employer the burden of proving good faith as a defense. The classic case invoking such a duty of good faith would be the discharge of a thirty-year employee six months before a pension vests, or the dismissal of an employee for spurning the affections of a co-worker. *See generally* Minda & Raab *Time for an Unjust Dismissal Statute in New York*, 54 Brook.L.Rev. 1137, 1147 (1989); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 131, 316 A.2d 549, 551 (1974).

Only a small handful of states have adopted the doctrine. Although Fogel sug-

gests we adopt the action as a tort, four of the five states that recognize the covenant treat it as a contract-based action. *Hoffman–La Roche, Inc. v. Campbell,* 512 So.2d 725, 738 (Ala.1987) (contract); *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 670, 765 P.2d 373, 389–96, 254 Cal.Rptr. 211, 234–39 (1988) (contract); *Fortune v. National Cash Register, Co.,* 373 Mass. 96, 102, 364 N.E.2d 1251, 1256 (1977) (contract); *Gates v. Life of Montana Ins. Co.,* 638 P.2d 1063, 1067 (Mont.1982) (tort); *Monge,* 114 N.H. at 133, 316 A.2d at 531 (contract). New Hampshire, the leading state recognizing the covenant of good faith, has since limited the action to dismissals that are in violation of public policy. *Howard v. Dorr Woolen Co.,* 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980).

The majority of jurisdictions that have addressed the covenant have unequivocally rejected it. *See, e.g., Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 377, 652 P.2d 625, 629 (1982); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 227, 685 P.2d 1081, 1086 (1984); *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 569, 335 N.W.2d 834, 838 (1983); *Butterfield v. Citibank of South Dakota,* 437 N.W.2d at 860, (S.D.1989); *Morriss v. Coleman Co., Inc.,* 241 Kan. 501, 738 P.2d 841, 851 (1987); *Sadler v. Basin Elec. Power Co-op,* 409 N.W.2d 87, 89 (N.D.1987); *Cockels v. Intern. Business Expositions, Inc.,* 159 Mich. App. 30, 36–37, 406 N.W.2d 465, 468 (1987); *Hunt v. IBM Mid–America Employees Fed. Credit Union,* 384 N.W.2d at 858; *Neighbors v. Kirksville College of Osteopathic Medicine,* 694 S.W.2d 822, 824 (Mo. App.1985); *Larrabee v. Penobscot Frozen Foods Inc.,* 486 A.2d 97, 100 (Me.1984).

We need not decide in this case whether to join the limited number of jurisdictions that have recognized the doctrine. The facts in the record before us simply do not compel its consideration. No reason appears to reverse the district court's judgment on this ground.

AFFIRMED.