Robert J. HOEFER and William H. Hoefer d/b/a The Administrators, Appellants,

v.

WISCONSIN EDUCATION ASSOCIATION INSURANCE TRUST and Sioux City Education Association, Appellees.

Robert J. HOEFER d/b/a The Administrators, Appellant,

v.

SIOUX CITY COMMUNITY SCHOOL DISTRICT; Woodbury County; State of Iowa, and Dr. Thomas Padgett, Mary Beth Satterfield, Dr. James Hartje; and Patricia Van Bramer, as Individual Members of the Board of Education of the Sioux City Community School District, Appellees.

Nos. 90–11, 90–105.

Supreme Court of Iowa.

May 15, 1991.

Rehearing Denied July 17, 1991.

Paul W. Deck of Deck & Deck, Sioux City, for appellants.

Charles D. Clausen of Friebert, Finerty & St. John, S.C., Milwaukee, Wis., for Wisconsin Educ. Ass'n Ins. Trust.

James L. Sayre of Sayre & Gribble, P.C., Des Moines, for Sioux City Educ. Ass'n.

Michael R. Hellige, Sioux City, for Sioux City Community School Dist. and individual appellees.

NEUMAN, Justice.

These two cases reach us on appeal from summary judgments entered in favor of defendants who were involved in securing a health benefits contract for employees of the Sioux City School District in 1983. Prior to 1983, plaintiffs Robert J. Hoefer and William H. Hoefer d/b/a The Administrators (hereinafter "Hoefer") had for many years serviced the account as the agent of Washington National Insurance Co. Faced with escalating premium costs, however, the Sioux City Community School District (hereinafter "school board") sought competitive bids and ultimately awarded the contract to defendant Wisconsin Education Association Insurance Trust (hereinafter "WEAIT").

Hoefer's loss of this business prompted a flurry of litigation over WEAIT's authority to furnish health coverage in this state. WEAIT claimed to be an "employee welfare benefit plan" subject to federal regulation under the Employment Retirement Income Security Act of 1974 (ERISA) and thus exempt from state insurance regulation. But in *Wisconsin Education Association Insurance Trust v. Iowa State Board of Public Instruction*, 804 F.2d 1059, 1065 (8th Cir.1986), WEAIT's claim of

federal preemption was defeated when the United States Court of Appeals ruled that WEAIT's practice of furnishing benefits to members and nonmembers of the sponsoring union disqualified it as an ERISA trust. We subsequently held that Iowa Code section 509A.6 (1983) prohibited Iowa school boards from contracting for health coverage with unregulated entities like WEAIT, even upon the mutual consent of the school board and union. *Sioux City Community School Dist. v. Iowa State Bd. of Pub. Instruction*, 402 N.W.2d 739, 744 (Iowa 1987).

Armed with these decisions, Hoefer proceeded to sue nearly everyone involved in the fateful decision to contract with WEAIT. These are the cases now before us.

In one action, Hoefer sued WEAIT and the Sioux City Education Association (hereinafter "union") on theories of fraud, conspiracy, and tortious interference with prospective business relations. In essence, Hoefer claimed that WEAIT and the union (1) knew WEAIT lacked authority to bid but bid anyway, (2) misrepresented WEAIT's ERISA status to the school board, (3) used the union to illegally pressure the school board into accepting WEAIT's bid, (4) intentionally interfered with Hoefer's prospective contract with the school district, and (5) conspired to perpetuate the fraud concerning WEAIT's legal status. Hoefer sought substantial damages from lost commissions and expense of preparing a useless bid, plus attorney fees and punitive damages.

In the second suit, Hoefer accused the school district and four individual school board members of fraud, promissory estoppel, tortious interference with prospective business advantage, and unlawful disbursement of public funds. Both the school district and the individual defendants responded by asserting immunity from suit under Iowa Code chapter 613A (1987).

Following discovery, defendants moved for summary judgment in each case, contending that the assembled record of sworn testimony and exhibits revealed an utter lack of evidence supporting any of plaintiffs' claims as a matter of law. The district court sustained the motions, concluding that defendants' actions, though arguably mistaken when viewed in retrospect, were done in good faith. Moreover, the court held that Hoefer could claim no resulting damages because his bid ranked only seventh place in all bids considered by the school board. It is from these decisions that Hoefer appeals. We affirm.

## I. Scope of review.

■ At the heart of both appeals lies Hoefer's claim that these controversies were not properly resolved by summary judgment. Our review of such a challenge is well settled. Like the trial court, we first determine whether any genuine issues of material fact are in dispute. If there are none, then we determine whether the trial court correctly decided that the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *see KMEG Television, Inc. v. Iowa State Bd. of Regents*, 440 N.W.2d 382, 384 (Iowa 1989); *Blessing v. Norwest Bank Marion, N.A.*, 429 N.W.2d 142, 143 (Iowa 1988).

■ The defendants, as the moving parties, carry the burden of showing that no issue of material fact exists. *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 454 (Iowa 1989). The resisting party is afforded every legitimate inference that can be reasonably deduced from the evidence. *Id.* A fact question is generated if reasonable minds could differ on how the issue should be resolved. *Id.; Henkel v. R and S Bottling Co.*, 323 N.W.2d 185, 187–88 (Iowa 1982).

■ While intentional torts, like the fraud claims asserted here, are generally poor candidates for summary judgment because of the subjective nature of motive and intent, *see State Sav. Bank v. Allis–Chalmers Corp.*, 431 N.W.2d 383, 386 (Iowa App.1988), the rule is not absolute and, as the district court wisely noted, "there is no genuine issue of fact if there is no evidence." Put another way, the party resisting summary judgment "may not rest upon the mere allegations or denials of his

pleading." Iowa R.Civ.P. 237(e). The resistance must set forth specific facts constituting competent evidence to support a prima facie claim. *Fogel*, 446 N.W.2d at 454; *Prior v. Rathjen*, 199 N.W.2d 327, 330 (Iowa 1972). This requirement weeds out "[p]aper cases and defenses" in order "to make the way for litigation which does have something to it." *Fogel*, 446 N.W.2d at 454 (quoting *Gruener v. Cedar Falls*, 189 N.W.2d 577, 580 (Iowa 1971)).

Our task is to review the record made in support of and in resistance to the motion to determine whether summary judgment was properly granted. *Blessing*, 429 N.W.2d at 143; *Fogel*, 446 N.W.2d at 454. We concern ourselves only with those factual issues that "materially affect the narrow issue posed by the motion for summary judgment." *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 424 (Iowa 1988). Factual disputes falling outside this narrow scope do not furnish grounds for reversing the court's judgment.

With these principles in mind, we consider the issues raised by each appeal. Material facts revealed by the pleadings, affidavits and sworn testimony will be detailed as they become pertinent to the parties' arguments.

## II. Hoefer's suit against WEAIT and the union.

*A. Procedural issue.* Before challenging the merits of the adverse judgment, Hoefer contests the way in which the matter came before the court. A brief procedural history is required to understand plaintiff's claim.

Hoefer prevailed against defendants' motions to dismiss filed in 1986, and again prevailed when the defendants moved for summary judgment in July 1988. These latter motions were heard by Judge Dewey Gaul who first sustained—and on further consideration, overruled—the movants' request for judgment as a matter of law. The case was then scheduled for trial in September 1989 before Judge Richard Vipond.

When Judge Vipond reviewed the file in anticipation for trial, he decided that the defendants' unsuccessful summary judgment motions should be set for rehearing and reconsideration. During the intervening year additional discovery had occurred. Each party was allowed to brief and argue the issues anew. Judge Vipond ruled adversely to Hoefer who now claims the judge had no authority to reverse Judge Gaul's earlier ruling.

■ While it may be uncommon for a district court to reconsider a motion sua sponte, Iowa adheres to the general rule that a district court judge may review and change a prior interlocutory ruling of another district judge in the same case. *Iowa Elec. Light & Power Co. v. Lagle*, 430 N.W.2d 393, 396 (Iowa 1988); *State v. Wrage*, 279 N.W.2d 4, 6 (Iowa 1979); *State v. Richards*, 229 N.W.2d 229, 233 (Iowa 1975); *Kuiken v. Garrett*, 243 Iowa 785, 793, 51 N.W.2d 149, 154 (1952). When exercised with discretion, the rule enhances the court's integrity by refusing to give either party a "vested right to require the court to perpetuate its mistake." *Kuiken*, 243 Iowa at 793, 51 N.W.2d at 154. Moreover, we have concluded that a change of judges makes little difference "since it is the same court." *Richards*, 229 N.W.2d at 233.

Hoefer urges us to abandon the rule on grounds that it fosters judge-shopping, creates mini-appellate courts within the districts, causes unnecessary delay, and breeds uncertainty in decision making. We fully recognize that, taken to the extreme, the rule could lead to the evils Hoefer predicts. Such a case is not before us, however.

■ None of the litigants sought out Judge Vipond to obtain a more favorable ruling. Once he made the decision to reconsider Judge Gaul's ruling, he gave the parties time to brief the issues anew. Substantial time had elapsed since the earlier ruling; additional discovery arguably altered the complexion of the case. Finally, no delay occurred because the judge's final decision was rendered prior to the date originally set for trial.

For all these reasons, we are convinced that Judge Vipond acted within the discretion granted him in these circumstances. No ground for reversal appears.

B. *Substantive claims.*

■ 1. *Fraud.* To prevail on a claim of fraud, a plaintiff must prove the following elements:

(1) a material misrepresentation (2) made knowingly (scienter) (3) with intent to induce the plaintiff to act or refrain from acting (4) upon which the plaintiff justifiably relies (5) with damages.

*Beeck v. Kapalis,* 302 N.W.2d 90, 94 (Iowa 1981). The crux of Hoefer's complaint is that WEAIT intentionally or recklessly misrepresented its ERISA status to the school board and the union, thereby currying their favor and ultimately fostering a conspiracy between them to deprive plaintiff of future health insurance business with the district.

■ For purposes of appeal, WEAIT concedes that a misrepresentation occurred. It urges us, however, to uphold the district court's finding that any misrepresentation was unintentional and based merely on an honest misunderstanding of the law which is not actionable. Hoefer responds by asserting that WEAIT did not just voice an opinion regarding its ERISA status; it asserted the status as a fact, knowing all along the question was subject to some doubt. WEAIT's knowledge and intent, Hoefer contends, raise disputed material facts which cannot be decided by the court as a matter of law.

Were scienter the only controverted element, Hoefer's argument might well prevail. As the following quote makes plain, it is customarily the jury that must draw the distinction between one who misunderstands the law and one who falsely asserts a legal fact:

A mere statement of an honest opinion, as distinguished from an assertion of fact will not amount to fraud, even though such opinion be incorrect. When the statements become representations of fact, or the expression of opinion is insincere and made to deceive or mislead they may be treated as fraudulent.

Whether such is their quality and character is ordinarily a jury question.

*International Milling Co. v. Gish,* 258 Iowa 63, 73, 137 N.W.2d 625, 631 (1965); *see also Beeck,* 302 N.W.2d at 95 (assertion of honest belief, even from reliable source, insufficient to overcome jury question concerning whether statement was made recklessly or with careless disregard for truth or falsity).

The district court also concluded, however, that Hoefer failed to produce any evidence on the damage element of the fraud claim. With this conclusion we strongly concur. Irrespective of any misrepresentation by WEAIT, intentional or otherwise, nothing more than surmise underlies Hoefer's claim that he lost this business as a result of WEAIT's action. Where resort to speculation or conjecture is necessary to determine whether damages have been sustained as a result of a defendant's acts, recovery must be denied. *Jamison v. Knosby,* 423 N.W.2d 2, 6 (Iowa 1988); *Renze Hybrids, Inc. v. Shell Oil Co.,* 418 N.W.2d 634, 639 (Iowa 1988); *Larsen v. United Federal Sav. & Loan Ass'n,* 300 N.W.2d 281, 288 (Iowa 1981); 22 Am. Jur.2d *Damages* § 487, at 569–70.

Hoefer's principal—Washington National Insurance Company—indisputably ranked seventh among bidders deemed qualified by the school board, based on the cost for a twelve-month premium. Hoefer attempts to discredit the ranking by asserting that (1) at least two of the bidders (WEAIT and Blue Cross) were unauthorized to provide "insurance" for these public employees and should have been prohibited from bidding, and (2) the school board erroneously refused to reduce Washington National's bid by a return of surplus which would have made it the lowest bidder. For the reasons that follow, we are convinced that these arguments are either unsupported in fact or immaterial to the issue of whether Washington National would have secured the bid had WEAIT been disqualified.

First, it is undisputed that the mutual goal of the school board and the union was to obtain coverage identical to that formerly furnished by Washington National, but

at a lower cost. Finding "mirror image" coverage was important because any deviation in benefits would subject the district to possible grievance for failure to abide by the collective bargaining agreement. The record reveals that even if WEAIT and Blue Cross were eliminated as competitors, Washington National would still rank fifth behind Prudential, First Horizon, Equitable, and Travelers on this score. Hoefer has come forward with no proof to sustain more than speculation that the ranking of the remaining bidders would have been reevaluated if the two lowest bids had been disqualified.

Second, Hoefer asserts that Washington National ranked seventh place in the bidding only because the school board "wrongfully excluded its additional offer to return 70% of surplus." Under Washington National's contract with the school district, a "surplus" resulted when the district advanced more in premium than the insurance company paid out in claims. The school board refused to reduce Washington National's bid by the "return of surplus" Hoefer offered because it was convinced that it would be entitled to this offset in any event.

The district court concluded that Hoefer could show no nexus between the school board's ranking decision and any claim of wrongdoing by WEAIT and the union. Even more fundamental to the question of damages, however, is the fact that Hoefer's claim of error was directly contradicted by an executive from Washington National. Vice president Robert Ramey's sworn testimony reveals that the school district was carrying a deficit forward of $407,000 for 1982 but generated a surplus in 1983 of $694,000 resulting in a return premium to the district of over $290,000 paid in 1984. Thus the school board was correct in its decision *not* to reduce Washington National's bid as Hoefer suggested, and Hoefer can claim no mistake in the rankings as a result.

In summary, the lengthy record made on summary judgment does not contain a shred of evidence to support Hoefer's contention that WEAIT's misrepresentation of its eligibility to bid led to Washington National's loss of this business. To the contrary, the record plainly reveals that Washington National was outbid by at least five other competitors. Given these facts, we find no error in the district court's determination that Hoefer could claim no damage resulting from lost commissions prompted by WEAIT's misrepresentation, or the union's complicity in it, even if it were proven. The court properly entered judgment for defendants on the fraud count as a matter of law.

2. *Tortious interference with prospective business advantage and conspiracy.*

■ We need not detail the essential elements of these causes of action because their common element—damages—suffers from the same lack of evidence which defeats Hoefer's claim of fraud. We note, however, that plaintiffs who allege tortious interference with prospective business relations are held to a strict standard of substantial proof "that the defendant acted with a predominantly improper purpose." *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 800 (Iowa 1984). In a competitive business setting, this rule of strict proof operates "to avoid opening the door to virtually limitless suits of a highly speculative and remote nature." *Page County Appliance Center v. Honeywell, Inc.,* 347 N.W.2d 171, 178 (Iowa 1984). The district court ruled that Hoefer tendered no proof on this claim in response to defendants' summary judgment motion. We agree.

■ It is undeniable that WEAIT sought this bid to the exclusion of Washington National; the success of WEAIT's promotional efforts led to the defeat of several competitors, among them Washington National. Beyond proof of WEAIT's competitive desire to secure the bid for itself, however, Hoefer can point to no evidence that WEAIT acted with the purpose to injure Washington National, much less a *predominant* purpose to do so. Reversing the district court's ruling would be tantamount to giving all unsuccessful bidders a cause of action for losing the bid. This is precisely the pitfall our decisions in *Harsha* and *Page County* sought to avoid.

The issue was correctly resolved as a matter of law.

Finally, Hoefer's claim of conspiracy finds no support in the record. Any negative inference to be drawn from the union's support of WEAIT's proposal would be based on sheer surmise. Even granting the liberality accorded claims which must by nature rely on circumstantial evidence, the record is simply devoid of any proof on the essential element of "concerted action to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Countryman v. Mt. Pleasant Bank & Trust Co.*, 357 N.W.2d 599, 602 (Iowa 1984). The assignment of error is without merit.

### III. Hoefer's suit against the school board and its individual members.

A. Hoefer's suit against the school board and its members on theories of fraud, promissory estoppel, and intentional interference with prospective business relations rests on the same shaky foundation as his claims against WEAIT and the union. He shifts the blame for his loss, however, from WEAIT's alleged fraud in the representation of its legal status to the school board and its members' failure to discern this legal infirmity in advance of awarding the contract to WEAIT.

The same undisputed facts that defeat Hoefer's action for damages against WEAIT and the union are likewise fatal to these claims. Washington National did not rank second behind WEAIT in the bidding process; it ranked seventh. Even if WEAIT had been eliminated at the outset, a fact finder could only guess about where Washington National would have landed on the list. Having combed through all the evidence submitted in response to the defendants' motions for summary judgment, we are convinced that cost and identity of benefits were the only criteria driving the board members' decision. By this standard, Washington National could only claim sixth place. The district court correctly determined that Hoefer could not recover on these theories as a matter of law.

B. Finally, Hoefer asserted his status as a taxpayer to claim $3 million in reimbursement from the individual board members for premiums illegally paid to WEAIT. Under Iowa law, a school board member or other public official may suffer personal liability for payments made under an illegal contract, but only if actuated by fraud, bad faith, or personal profit. *Elview Constr. Co. v. North Scott Community School Dist.*, 373 N.W.2d 138, 145 (Iowa 1985). The district court ruled against Hoefer on this claim. It commended him for his vigorous and successful advocacy against WEAIT, but concluded that the record revealed no evidence which, viewed in the light most favorable to plaintiff, would permit a rational fact finder to find that any of the individual defendants acted as a result of fraud, bad faith or a desire for personal profit.

On appeal, Hoefer reasserts his claims against these individuals without a single citation to the transcript or appendix for factual support. This violation of Iowa Rule of Appellate Procedure 14(a)(5), (g) would alone permit us to ignore plaintiff's contentions altogether. *Trachtel v. Essex Group, Inc.*, 452 N.W.2d 171, 174 (Iowa 1990). We have, however, read the record submitted on appeal and conclude that these school board members relied in good faith on the advice of counsel in reaching their decision to award the contract to WEAIT. No evidence to the contrary appears.

As the district court wisely noted, "the public must be protected from dishonest officials, but the public business could not be conducted if officials had to be infallible." The school board and its members may have erred in choosing WEAIT, but the time has come to put that decision to rest. Because of plaintiff's failure to tender proof on each of the essential elements of his theories of recovery, we affirm the district court's judgment for the defendants as a matter of law.

AFFIRMED.