David L. FRENCH, Sr., Appellant,

v.

FOODS, INC.; Dean Van Langen, Individually and d/b/a VL Polygraph Services; VL Polygraph Ltd., A Defunct Corporation of the State of Iowa; and Ronald C. Bartos, Appellees.

No. 92–27.

Supreme Court of Iowa.

Feb. 17, 1993.

Rehearing Denied March 26, 1993.

Roger J. Kuhle and John C. Barrett, Des Moines, for appellant.

Russell L. Samson and Gayla R. Harrison of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

David French, fired from his job at a Des Moines Dahl's store, sued the store's owner and Ronald Bartos, a vice president, for alleged wrongful discharge. The district court granted summary judgment for the defendants, and French appealed. We affirm.

In September 1990, French was the leader of a crew of overnight grocery stockers at the Dahl's store. Dahl's management had received reports that the night crew was eating food without paying for it, in violation of employment rules. According to one witness, the employees enjoyed a virtual smorgasbord. Dahl's hired a private investigator, Dean Van Langen, to investigate. One at a time, Van Langen took the stocking crew to a room in the basement where he interviewed them.

During the interview, French wrote out a statement, which said, in part:

During my employment at Dahl's for the last two years I have ~~not~~ DF knowing not payed for pop from time to time, also a piece or two of chicken, some peanuts. The total of this items would not exceed $20.00. I will be willing to repay Dahl's this amount.

It is undisputed that Van Langen stopped French partway through the written statement, suggesting that French cross out the first "not" and initial it. French complied. Van Langen testified in his deposition that this change was suggested so the statement would make sense. French counters that this "correction" illustrates the coercive nature of the interview and that it erroneously inculpated French in the pilfering.

French was fired immediately, as a result of the Van Langen interview, and this suit followed. Van Langen and his polygraph businesses were initially named as defendants, however, that suit was settled prior to trial. We will refer to the remaining defendants, Foods, Inc. (Dahl's) and Bartos, simply as Dahl's.

French alleged that, by firing him, Dahl's breached an express contract of employment, an implied-in-fact contract, and an implied-at-law covenant of good faith and fair dealing. He also asserted various tort claims. The district court rejected all of these theories and granted summary judgment for the defendants. On appeal, the issue is whether there were disputed issues of material fact and whether Dahl's was entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c).

I. *The Unilateral Contract Argument.*

■ Dahl's argues that French was an at-will employee and was subject to discharge at any time, for any reason, or for no reason at all. This is the general rule, firmly ingrained in Iowa law. *See Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 455 (Iowa 1989); *Wolfe v. Graether*, 389 N.W.2d 643, 652 (Iowa 1986).

■ There are two recognized exceptions to this general rule: (1) when the discharge is in clear violation of a "well-recognized and defined public policy of the State," *Fogel*, 446 N.W.2d at 455 (quoting *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988)); and (2) when a contract created by an employer's handbook or policy manual guarantees an employee that discharge will occur only for cause or under certain conditions. *Fogel*, 446 N.W.2d at 455; *McBride v. City of Sioux City*, 444 N.W.2d 85, 90 (Iowa 1989); *Cannon v. National By–Products, Inc.*, 422 N.W.2d 638, 640 (Iowa 1988).

Under the second exception, the one relied on here,

> an employee handbook may create a unilateral contract if (1) the handbook is sufficiently definite in its terms to create an *offer;* (2) the handbook has been communicated to and accepted by the employee so as to create an *acceptance;* (3) the employee has continued working, so as to provide *consideration.*

*Fogel*, 446 N.W.2d at 456; *accord McBride*, 444 N.W.2d at 91.

■ Except when there is ambiguity, the question of whether a written instrument such as an employee handbook binds the parties in contract is a question of law. *Fogel*, 446 N.W.2d at 456. The threshold legal question in this case is whether the terms of the handbook are sufficiently definite to constitute an offer of continued employment. We believe they are not.

In the preamble, the following provision appears (set out with a solid-line border for emphasis):

> This handbook has been prepared to acquaint you with our Company, your responsibilities as an employee, and the many benefits and privileges our employees may enjoy. It is presented as a matter of information only. While the Company believes wholeheartedly in the plans, policies and procedures described, it is committed to reviewing them continually, and reserves the right to change or terminate any or all of them at any time. *Just as you retain the right to terminate your employment at any time, for any reason, Dahl's retains a similar right. No policy or practice of the Company should be construed to change this relationship. Only corporate officers have the right to modify or change this practice, and such action must be in writing.*

(Emphasis added.)

Page fifteen of the handbook stated this with respect to termination:

> We hope that your association with Dahl's will be a long and happy one. *You do have the right, however, to terminate your employment at any time for any or no reason. Dahl's retains a similar right.*
>
> . . . .
>
> It is the policy of Dahl's that any conduct which, in its view, interferes with or adversely affects employment or the Company is sufficient grounds for discipline, including dismissal. Examples of conduct for which employment may be terminated include, but are not limited to, unsatisfactory performance, unacceptable tardiness or absenteeism, violation of the "Code of Conduct," dishonesty, insubordination, or any reason not prohibited by law. Dahl's reserves the right to terminate employment immediately, if it believes circumstances warrant.

(Emphasis added.)

In addition, French signed a receipt for a copy of the handbook, which stated:

> I certify that I have received a copy of the Dahl's Food Employee Handbook dated July 1990.
>
> I have read it and understand it. I recognize that Dahl's reserves the right to modify or terminate the matters covered in the Handbook at any time. I agree to comply with store policies. *I recognize that either Dahl's or I may terminate the employment relationship at any time for any reason.*

(Emphasis added.)

The present case must be distinguished from *Hunter v. Board of Trustees*, 481 N.W.2d 510 (Iowa 1992), in which we upheld a finding of a unilateral contract based on the employee handbook. In

*Hunter,* the handbook was amenable to an interpretation that discharge would be permitted only on one of the seven grounds set out in the handbook (voluntary resignation, voluntary quit, retirement, "three-day quit," expired leave, discharge for cause, and staff reduction).

Unlike *Hunter,* there is no provision in the handbook in this case that limits the grounds for termination. Nor does the handbook suggest, as in *Hunter,* that a discharge may only be for cause. We agree with the district court that, as a matter of law, the handbook did not establish a unilateral contract for continued employment.

## II. *The Implied–In–Fact Argument.*

■ In *Cannon,* we held that a contractual obligation may be found even if it was not the employer's intention that its handbook confer contractual rights. 422 N.W.2d at 640. French argues that there were disputed fact issues on the "mutual manifestations of assent," *Duhme v. Duhme,* 260 N.W.2d 415, 419 (Iowa 1977), which underlies this theory, and therefore it was error to grant summary judgment.

French points to a paragraph of the handbook that, he claims, anticipates that the actual practices and customs at the Dahl's store may imply terms supplementing, or even contradicting, those contained in the handbook. The paragraph he relies on stated:

This handbook does not contain all of the information you will need during the course of employment. You may receive additional information through various written notices as well as orally....

We do not agree with French's interpretation of this paragraph, especially in view of the language of the handbook that expressly prohibits modification except under limited circumstances. That provision states:

No policy or practice of the Company should be construed to change this [at-will] relationship. Only corporate officers have the right to modify or change this practice, and such action must be in writing.

The oral statements relied on by French to vary the written provisions of the handbook were not made in writing, nor were they made by officers of the corporation. In fact, they appear to have been merely offhand comments by supervisory personnel with virtually no probative value on the question of Dahl's' right to terminate without cause.

The "mutual manifestation of assent" necessary to establish an implied-in-fact contract, *Duhme,* 260 N.W.2d at 419, is missing. It is clear that the employer did not "assent" to implied modification of its handbook and in fact strongly resisted it.

## III. *The Implied Covenant Argument.*

■ French also urges us to adopt a cause of action for breach of an implied (in law) covenant of good faith and fair dealing, a theory that we expressly rejected in *Fogel,* 446 N.W.2d at 456–57. In rejecting this theory, we joined the majority of jurisdictions that have considered it. *Id.* at 457. We adhere to that view here.

## IV. *The Tort Claims.*

French's petition also alleged claims for tortious discharge, violation of Iowa Code chapter 730 (1989) ("blacklisting" statute), "prima facie tort," and malicious discharge.

■ A. *Tortious discharge.* In *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558 (Iowa 1988), we recognized a common-law cause of action for wrongful discharge in a case of an employee who had been fired for filing a workers' compensation claim. We held that violation of a specific expression of public policy could provide the basis for liability in tort in an employment discharge. *Id.* at 560–61.

French argues that "it is an important policy of this state that every person is presumed innocent until proven guilty," citing Iowa Code section 701.3. In addition, he points to Iowa's policy against suborning perjury and the prohibition against making a false charge of dishonesty.

We summarily reject these arguments. Notwithstanding French's claim that Van

Langen's tactics in obtaining his written statement were high-handed and coercive, this case does not involve perjury or a criminal charge of dishonesty. Nor does it involve the presumption of innocence.

■ B. *The blacklisting argument.* French also contends that Dahl's' conduct is prohibited by Iowa Code section 730.3, which provides:

Every person who shall by any letter, mark, sign, or designation whatever, or by any verbal statement, falsely and without probable cause, report to any railroad or any other company or corporation, or to any person or firm, or to any of the officers, servants, agents, or employees of any such corporation, person, or firm, that any conductor, crew member, engineer, stoker, station agent, or any employee of such railroad company, corporation, person, or firm has received any money or thing of value for the transportation of persons or property or for other service for which the person has not accounted to such corporation, person, or firm, or shall falsely and without probable cause report that any conductor, crew member, engineer, stoker, station agent, or other employee of any railroad company, corporation, firm, or person, neglected, failed, or refused to collect any money or ticket for transportation of persons or property or other service when it was their duty so to do, shall, on conviction, be guilty of a simple misdemeanor.

Although this statute was adopted early in this century, there are no reported cases under it. It appears, however, that it involves blacklisting an employee with a potential future employer, and that is not the case here. All of the communications regarding the pilferage were limited to Dahl's and its own investigator.

French has not shown a clearly expressed public policy that could provide the basis for a civil suit under this theory.

■ C. *The prima facie tort argument.* In pressing his prima facie tort argument, French relies on *Hall v. Montgomery Ward and Co.*, 252 N.W.2d 421 (Iowa 1977). In that case, we recognized a

cause of action for violation of the extortion section, Iowa Code § 720.1 (1973) (now codified as § 711.4 (1991)). *Hall*, like the present case, involved an employee's written statement of wrongdoing given to an employer. We held that the criminal section on extortion, § 720.1 (1973), provided a basis for a civil suit. 252 N.W.2d at 424.

Section 720.1, in effect at the time of *Hall*, was significantly different from the present extortion statute, § 711.4. The statute involved in *Hall* prohibited threatening

to accuse another of a crime or offense, or to do any injury to the person or property of another, with intent to extort any money or pecuniary advantage whatever, *or to compel the person so threatened to do any act against his will....*

(Emphasis added.)

In contrast, the successor section, § 711.4, now provides:

A person commits extortion if the person does any of the following *with the purpose of obtaining for oneself or another anything of value, tangible or intangible, including labor or services....*

(Emphasis added.)

Section 711.4 is now limited to conduct aimed at obtaining something of value and no longer prohibits compelling a person to perform an act against their will. In view of this change in the statute, after *Hall*, we do not believe that case is authority for establishing a cause of action under the facts of this case. There is no fact issue concerning any intent to obtain anything of value from French, nor is any claimed. We find no error in granting summary judgment under this theory.

■ D. *The malicious discharge argument.* French relies on the theory of malicious discharge as recognized in *Tourville v. Inter–Ocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), and *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Those cases recognized a cause of action against an employer who had acted with the specific intent to harm the employee. We have

never recognized such a theory of recovery and decline to do so now. Moreover, there is no evidence to support a finding of intent to harm.

We find no error on any of the grounds discussed or on any others raised in the appellant's brief and therefore affirm.

AFFIRMED.