Diane YOCKEY, Appellant,

v.

STATE of Iowa, Appellee.

No. 94–1401.

Supreme Court of Iowa.

Nov. 22, 1995.

Bruce H. Stoltze of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney Gener-

al, and Kerry Anderson, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and SNELL, JJ.

HARRIS, Justice.

A former employee's suit claims she was wrongfully discharged in retaliation for having filed a workers' compensation claim. The evidence adduced at trial did not support any assertion that she was discharged for that reason. The evidence disclosed the discharge was prompted by another reason: frequent absences, some of which—according to the evidence—were attributable to work-related injuries. Based on the theory pled, we need not and do not decide whether Iowa's workers' compensation Act implicitly grants an employee a reasonable time to recover following a work-related injury before being subject to discharge due to absenteeism. Because we agree that a jury case was not made out on the claim alleged, we affirm a trial court ruling dismissing the suit.

Plaintiff Diane Yockey was hired as an employee by the Iowa department of transportation (DOT) to perform the tasks of an equipment operator, effective February 2, 1990. She was informed that, although it was expected her appointment would become a permanent full-time position, she would be on probation for the first six months of employment. During that time she was to have all the rights and benefits of a permanent employee except: (1) she was not eligible for promotion, voluntary demotion, or transfer; and (2) she could be terminated without right of appeal. Yockey was also told, through the DOT's employee handbook, that, in accordance with established forms and procedures, her performance would be evaluated after three months on the job and again after five months. Based on these evaluations a decision as to permanent retention would be made by the time she was employed for six months.

At her three-month evaluation Yockey was told her efforts fell short of the standards for "competent performance." Her supervisor explained she needed to improve in several areas, particularly attendance, or she would be terminated. At the time of the three-month evaluation Yockey had taken 35.6 hours of sick leave and 9 hours of vacation, for a total of 44.6 hours off work. After this evaluation, Yockey used two additional days of sick leave.

Yockey meanwhile continued in her employment and tried to improve her job performance. On June 12 however she was injured while taking down a road sign. Yockey did not immediately report the injury as required by the employee handbook because, she says, she had been warned about excessive absences and she felt the injury was only temporary and would go away by itself. Finally, on June 19, 1990, the pain reached a point where Yockey decided to seek medical attention so she reported the injury to the DOT. She was absent from work due to the injury from June 19 to June 26, and then returned to work on light duty restrictions. On July 9 Yockey received $92.04 in workers' compensation benefits as a result of the injury.

As the six-month probationary period was nearing its end, a decision had to be made regarding whether her employment would become permanent. Yockey reported to work as usual on July 13, 1990. After completing several tasks she was called to her supervisor's office and told she was being discharged for failing to improve upon the deficiencies discussed at the three-month evaluation.

The supervisor, Ilo John Allen, testified at trial and explained that firing a DOT employee requires several steps. First Allen, as Yockey's supervisor, is required to make a recommendation. Next he discusses this decision with his own supervisor. If that supervisor agrees with the recommendation he discusses it with the district engineer and personnel in Ames (DOT headquarters). The process usually takes several weeks. Although Allen testified these procedures were followed with regard to Yockey, there was no documentation to support this claim. The only notations in Yockey's employment file subsequent to her three-month evaluation were notes detailing her workers' compensation injury. Yockey never received a five-

month evaluation as provided for in the employee handbook.

Yockey brought this suit against the DOT alleging her "termination was against public policy and a tortious interference with her contract of hire because the termination was a direct result of the plaintiff's filing of a workers' compensation claim because of an injury sustained on the job." She did not claim she was fired for absenteeism due to a job-related injury. The DOT answered by denying the allegations and pleading the affirmative defense that no contract for employment existed between the parties.

Prior to trial the district court concluded the pleadings did not allege a breach-of-contract claim, and that no suggested evidence would support such a claim. The case then proceeded to trial solely on the wrongful termination claim. The district court reserved ruling on the DOT's motion for a directed verdict at the close of both Yockey's case and the DOT's own case. The court did grant a directed verdict denying Yockey's claim for future emotional distress and also rejected Yockey's proposed jury instruction applying a shifting burden-of-proof analysis to retaliatory discharge actions.

The case was submitted to the jury which, after two and one-half days of deliberation, was unable to reach a verdict. After the jury was discharged the court sustained the DOT's motion for a directed verdict. The court especially noted Yockey testified "she did not believe or claim that she had been terminated for the making of a workers' compensation claim." Rather she believed her "termination was caused by the time off from work she was forced to take as a consequence of a work-related injury." The case is before us on Yockey's appeal from the directed verdict. Our review on an appeal from a directed verdict is on error. *Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 858 (Iowa 1994). We apply the facts as they appear from viewing the evidence in the light most favorable to the party against whom the verdict was directed. Iowa R.App.P. 14(f)(2).

I. As sometimes happens the controlling question in this appeal is different from the one initially posed in the pleadings. The suit was grounded on Yockey's assertion that she was fired in retaliation for filing a workers' compensation claim. Had she established this assertion she would have been entitled to recover. In *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560–61 (Iowa 1988), we determined that an employee-at-will had a remedy for damages when terminated for pursuing a statutory right to compensation for a work-related injury. Subsequent to *Springer* this cause of action has been further defined. *See, e.g., Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 353 (Iowa 1989) (cause of action for wrongful termination exists where employee merely threatened to file workers' compensation claim); *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 638 (Iowa 1990) (Iowa civil rights act preempts cause of action for wrongful termination based on discriminatory acts); *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 685 (Iowa 1990) (liability for wrongful termination even if employer does not interfere with receipt of workers' compensation benefits); *French v. Foods, Inc.*, 495 N.W.2d 768, 772 (Iowa 1993) (failure to show violation of clearly expressed public policy in anti-blacklisting statute); *Borschel v. City of Perry*, 512 N.W.2d 565, 568 (Iowa 1994) (presumption of innocence in criminal proceeding not applicable to unemployment arena therefore not a violation of public policy to terminate for arrest prior to trial).

We agree with Yockey that the trial court ruling cannot be defended on the basis of Yockey's status as a probationary employee, as contrasted with the *Springer* plaintiff's status as an at-will employee. We so agree even if we assume that a probationary employee's job security is more tenuous than that of an at-will employee. Our *Springer* holding had nothing to do with whether an employee had or lacked secure job tenure. The holding was grounded on public policy considerations protecting an injured worker's right to seek workers' compensation benefits. The same public policy considerations inure at least as strongly in favor of an injured probationary employee.

But the evidence falls far short of supporting any claim that Yockey was fired because she filed for workers' compensation benefits.

As mentioned, at the time she was fired, she had been paid the $92.04 she claimed in those benefits. She testified she did not think her filing for those benefits prompted her firing. There is no evidence that, when she was fired, the DOT would even suspect she might later, as she did, file for more benefits. Like the trial court, we accept as established Yockey's concession.

Yockey brought her claim solely on the theory that the firing was in retaliation for filing for workers' compensation benefits and then she expressly conceded during her testimony that she was not fired for that reason, but rather that her firing was prompted by the time off work she was forced to take as a consequence of a work-related injury. This admission establishes that the crucial factual claim in her suit was missing. The rule is well established that

> [i]f a party testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference, or uncertain memory, but as a considered circumstance of the case, his [or her] adversary is entitled to hold him [or her] to it as an informal judicial admission.

*Snittjer Grain Co. v. Koch*, 246 Iowa 1118, 1127, 71 N.W.2d 29, 34 (1955) (citation omitted); *see also Wiles v. Myerly*, 210 N.W.2d 619, 628 (Iowa 1973) (same); 31A C.J.S. *Evidence* § 270 (1964); 29A Am.Jur.2d *Evidence* § 754 (1994). We therefore hold that Yockey's testimony had the effect of an informal judicial admission and as a consequence her claim must fail.

II. Yockey attempts on appeal to rescue her cause on what has to be described as a decidedly different theory. For policy reasons somewhat akin to those implicated in *Springer*, she contends, an employee cannot be legally fired because of absences occasioned by a work-related injury. The issue was addressed in *Lo Dolce v. Regional Transit Service, Inc.*, 77 A.D.2d 697, 429 N.Y.S.2d 505, 505 (App.Div.3d 1980), *motion for leave to appeal denied*, 51 N.Y.2d 706, 433 N.Y.S.2d 1026, 413 N.E.2d 369 (1980). The claim arose when an employee was discharged pursuant to the employer's policy prohibiting excessive absenteeism. The record established that the employee was discharged solely because of lost time due to an employment-related accident. The court held that such a dismissal explicitly violated New York's workers' compensation law. The rationale of this decision was expanded upon in *Matter of Griffin*, 80 A.D.2d 689, 436 N.Y.S.2d 441, 441 (3d 1981), *motion for leave to appeal denied*, 55 N.Y.2d 605, 447 N.Y.S.2d 1028, 432 N.E.2d 603 (1982) (employee who had previously been warned about excessive absences entitled to prevail in wrongful termination suit after being fired for being absent again due to a work-related injury because "a contrary conclusion would tend to discourage employees who had received warnings concerning absenteeism from seeking medical attention"). But in *Duncan v. New York State Developmental Center*, 63 N.Y.2d 128, 481 N.Y.S.2d 22, 24, 470 N.E.2d 820, 822 (1984), New York's highest court rejected this broad interpretation. The court reasoned that economic realities of the market place required a different result:

> An employer should be permitted to take reasonable steps to secure a steady, reliable, and adequate work force.... The absence of a public employee from his position for a prolonged period unduly impairs the efficiency of an office or agency. In many cases, the duties of the absent employee must be absorbed by the remaining staff because temporary replacements are difficult to obtain. Continued performance of the business of government necessitates that there be a point at which the disabled officer may be replaced. These concerns are not diminished by the circumstance that the employee was injured on the job, rather than off. To forbid absolutely any detrimental treatment of an injured worker would transform [the workers' compensation law] into a job security clause, which is contrary to the Legislature's intent....

*Id.* 481 N.Y.S.2d at 23, 470 N.E.2d at 823 (citation omitted); *see also Pierce v. Franklin Elec. Co.*, 737 P.2d 921, 924 (Okla.1987) (workers' compensation provides only an insurance policy for injured workers, not guaranteed employment or other employment privileges).

The trial court allowed Yockey to argue to the jury that consideration by an employer of missed work due to work-related injuries could be evidence of a *Springer* claim, but commented that "a termination for the absences alone does not give rise to a cause of action." It is not appropriate for us to determine whether this was error because, as we have already pointed out, Yockey brought her claim solely on the theory that the firing was in retaliation for filing workers' compensation benefits. She cannot change that theory on appeal. *Gosha v. Woller*, 288 N.W.2d 329, 331 (Iowa 1980) (when plaintiff relied in pleadings on express-warranty theory, trial court erred by entering judgment on theory of implied warranty); *Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280, 286 (Iowa 1979) (theory under which a case was tried to the trial court will be the theory upon which the appeal is based). The theory we recognized in *Springer* and the theory Yockey now calls upon to rescue her case on appeal, though perhaps derived from the same public policy considerations, are dissimilar and stem from dissimilar factual claims. Yockey cannot make out a jury case on appeal by showing she was wrongfully discharged based on a theory not alleged in district court, even if we were to find such a theory to be valid.

III. Other assignments also fall with her concession that she was not fired for the reason she alleged. She contends that the burden-shifting analysis set forth in *Hulme v. Barrett*, 449 N.W.2d 629, 633 (Iowa 1989), should apply in all retaliatory discharge cases. In *Hulme*, an age discrimination case, we stated that a plaintiff states a prima facie case of retaliatory discharge when it is proven that (1) she was engaged in a statutorily-protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two. Once the plaintiff has made a prima facie case of retaliatory discharge, the defendant must articulate a legitimate, nonretaliatory reason for the dismissal. If the defendant produces sufficient evidence of a reason other than retaliation, the plaintiff can still prevail if she can prove that the reason offered was merely pretextual. In the past, we have applied the shifting burden-of-proof analysis in our civil rights cases. *Landals v. George A. Rolfes, Co.*, 454 N.W.2d 891, 893 (Iowa 1990). She has not made out a prima facie case on her retaliatory discharge claim. Hence the case does not provide a basis for us to consider her contention concerning a shifting of the burden of proof.

Similarly her contention that she was entitled to future emotional damages becomes moot. The claim for future emotional damages was appended to her suit for retaliatory discharge, and falls with it.

IV. A second exception to the employment-at-will doctrine arises where an employer's handbook or policy manual guarantees an employee that he or she may be discharged only for cause or under certain conditions. *See Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 455 (Iowa 1989) (citing the Iowa cases which developed the doctrine). These cases hold that such representations implicitly create a unilateral contract, and an at-will employee discharged in violation of the terms of the handbook or policy manual may maintain a breach-of-contract action against the employer. *Id.* An employee handbook may create a unilateral contract only when (1) the handbook is sufficiently definite in its terms to create an offer; (2) the handbook has been communicated to and accepted by the employee so as to create an acceptance; and (3) the employee has continued working, so as to provide consideration. *Id.* at 456 (citing *McBride v. City of Sioux City*, 444 N.W.2d 85, 91 (Iowa 1989)). Unless the terms are ambiguous, whether such a written instrument binds the parties in contract is a question of law.

Yockey assigns error in a ruling by which the trial court refused to submit a breach-of-contract theory. In part the refusal was grounded on a finding that the evidence did not support such a claim. We think the ruling was correct.

In *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 286 (Iowa 1995), an opinion we file today, we explain that a high standard of definiteness is not required in determining the existence of an offer of continued employment. We nevertheless think the employment here was clearly at-will. In both Yock-

ey's initial letter of acceptance and the DOT's employee handbook, it was stated that during the first six months of employment her status was "probationary," and during that time she could be terminated "without right of appeal." Clearly no contractual protection can be gleaned from this language. Yockey's claim of an implied contract is nothing more than her one-sided hope for continued employment. The trial court was correct in rejecting Yockey's breach-of-contract claim.

**AFFIRMED.**